UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BARBARA A. BAKER, *on behalf of herself and all others similarly situated*, | § § § § | |
| Plaintiff, | § § | Case No. 3:25-cv-01609-x |
| v. | § § | |
| 7-ELEVEN INC., | § § | |
| Defendant. | § § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant 7-Eleven Inc.'s motion to dismiss (Motion). (Doc. 44). Having carefully considered the Motion, the parties' briefing, the numerous notices of supplemental authority, and the arguments of counsel, the Court **DENIES** the Motion.

## I.    Background

This case is about 7-Eleven's health insurance plan. 7-Eleven acts as both sponsor and plan administrator of the 7-Eleven, Inc. Comprehensive Welfare Benefits Plan (the "Plan"). As part of the Plan, 7-Eleven offered a Tobacco-Free Wellness Program ("Wellness Program" or "Program") which provided a reward of reduced medical plan premiums to participants who self-reported to not use tobacco products. Participants who reported tobacco use were offered an alternative means to qualify for the same reward.

1

The Summary Plan Descriptions (Descriptions) for the relevant years described the Program in varying detail. Specifically, the 2023 Descriptions described the tobacco-use premium and the alternative means to qualify for the lower medical premium but failed to include a notice that the Plan could make accommodations at the request of a participant's personal physician.

The alternative to receive lower medical premiums varied by year. The 2021 and 2022 alternative under the Program required the participant to merely state she would try to quit tobacco. The 2023 and 2024 alternative under the Program required participants to complete a tobacco-cessation course that 7-Eleven paid for. Participants who completed the tobacco-cessation course by March 31 received a refund of the difference between the higher premiums initially paid and the discounted premiums for non-tobacco users. However, if the participant completed the alternative after March 31, the participant was only eligible to receive prospective removal of the higher health premium and not retroactive reimbursement.

Baker was employee of 7-Eleven for twelve years and voluntarily resigned in September 2024. Baker challenges the Plan during the years of 2021–2024; however, Baker never participated in the alternative under the Program and never received the reward of a lower medical premium. Baker filed this action in September 2024 on behalf of herself and others similarly situated, asserting claims arising from the Plan's tobacco-related premium.

## II.    Legal Standards

### A.    Standing

To bring a case before a federal court, a plaintiff must have standing—the "bedrock constitutional requirement" that restrains the judiciary and preserves separation of powers.[1]  The Supreme Court has outlined the requirements of standing under the Constitution:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.[2]

An injury in fact "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing."[3]  But statutes "cannot dispense with the injury requirement altogether."[4]  "Put differently, the deprivation of a right created by statute must be accompanied by 'some concrete interest that is affected by the

---

[1] *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 378 (2024) (cleaned up); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 429 (2021) ("A regime where Congress could freely authorize *unharmed* plaintiffs to sue defendants who violate federal law not only would violate Article III but also would infringe on the Executive Branch's Article II authority.").

[2] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up).  *But see Massachusetts v. EPA*, 549 U.S. 497, 520 (2007) (states without proof of a pocketbook injury have "special solicitude in our standing analysis" to challenge federal inaction on climate change).  *But see Texas v. United States*, 599 U.S. 670, 676 (2023) (states with proof of a pocketbook injury have no standing to challenge federal immigration prioritization).  🙂  Fortunately for the Court, Baker isn't a state, so the Court need not determine whether special solicitude or special solitude applies.

[3] *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982) (cleaned up).

[4] *Laufer v. Mann Hospitality, L.L.C.*, 996 F.3d 269, 272 (5th Cir. 2021).

3

deprivation.'"[5]  An injury must also be particularized, which the Supreme Court has defined to mean "it must affect the plaintiff in a personal and individual way."[6]

## B.    Motion to Dismiss

Rule 12(b)(6) authorizes dismissal when a complaint fails to "state a claim upon which relief can be granted."[7]  A pleading in federal court must state "a short and plain statement of the claim showing that the pleader is entitled to relief."[8]

Plaintiffs do not have to plead detailed facts, but "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[9]  For a complaint to survive a motion to dismiss under Rule 12(b)(6) it must allege sufficient facts "to state a claim to relief that is plausible on its face."[10]  And a claim is plausible on its face when supported by enough facts that the Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]

## III.    Analysis

Baker has plausibly pled standing, as well as her claims for the unlawful imposition of a discriminatory tobacco surcharge and for breach of fiduciary duty.

---

[5] *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 529 (5th Cir. 2016) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)).

[6] *Spokeo*, 578 U.S. at 339 (cleaned up).

[7] FED. R. CIV. P. 12(b)(6).

[8] FED. R. CIV. P. 8(a)(2).

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[10] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[11] *Iqbal*, 556 U.S. at 678.

## A. Baker plausibly pled standing to survive dismissal.

7-Eleven alleges that Baker lacks standing to support her claims in three ways—each argument fails.

Regarding Count I, 7-Eleven argues Baker lacks standing because she did not participate in the allegedly noncompliant Wellness Program. But 7-Eleven's argument misses the point. Participation in the Program is irrelevant—neither ERISA nor Article III requires a plaintiff to enroll in an unlawful program to establish standing.[12] Baker's injury did not arise from her participation (or non-participation) in the alternative under the Program, but from 7-Eleven's deduction of a $27.70 premium from each of her paychecks.[13] Therefore, Baker plausibly alleges a concrete, traceable monetary injury caused by 7-Eleven's allegedly uncompliant Program which is redressable by the Court.[14]

For Count II, 7-Eleven argues that Baker lacks standing based on informational injury. Courts have consistently recognized that disclosure violations tied to actual monetary loss confer standing.[15] ERISA disclosure violations can support standing when the omission interferes with a participant's ability to understand and exercise plan rights, and standing is denied only where no actual loss

---

[12] *See Bokma v. Performance Food Grp., Inc.*, 783 F. Supp. 3d 882, 892–95 (E.D. Va. May 20, 2025).

[13] *See Mehlberg v. Compass Grp. USA, Inc.,* No. 24-CV-04179-SRB, 2025 WL 1260700, at *2 (W.D. Mo. Apr. 15, 2025).

[14] *See generally*, *TransUnion*, 594 U.S. at 425 (noting that monetary harms "readily qualify as concrete injuries.").

[15] *Id.*

was shown.[16]  Here, the allegedly deficient notice is directly connected to Baker's monetary loss.  That loss constitutes a concrete injury traceable to 7-Eleven's conduct and redressable by judicial relief.  Baker therefore has standing to pursue Count II.[17]

Lastly, in its reply brief, 7-Eleven asserted a new argument that Baker lacks standing to seek prospective, injunctive, or declaratory relief on her claims and her representative claims because she is a *former* Plan participant and cannot allege *ongoing* or *future* harm.[18]  In general, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek."[19]  Prospective relief requires a showing of continuing harm or a real and immediate threat of future injury.[20]  But in the class-action context, "it is not proper for a trial court to dismiss a class action solely on the basis of a preliminary determination that the single named plaintiff purporting to represent the class is not entitled to relief on the merits of his individual claim."[21]

ERISA authorizes relief for plan participants that is "traditionally viewed as equitable."[22]  And former employees are expressly included in ERISA's definition of a

---

[16] *Mehlberg,* 2025 WL 1260700.

[17] *See In re Dell Inc.*, 563 F. Supp. 2d 681, 694–95 (W.D. Tex. 2008) (holding that failure to "provide complete and accurate information to participants" about their rights under a plan supported a viable ERISA claim).

[18] New arguments raised for the first time in a reply brief are generally waived.  *MBA Eng'g, Inc. v. Vantage Benefits Adm'rs, Inc.*, No. 3:17-CV-3300-L, 2019 WL 3759277, at *3 n.5 (N.D. Tex. Aug. 9, 2019) (Lindsay, J.) (citing *United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005)).  However, even considering the substance of this new theory on standing, the argument fails.

[19] *TransUnion*, 594 U.S. at 431.

[20] *Id.* at 435; *Gonzalez v. Blue Cross Blue Shield Ass'n*, 62 F.4th 891, 902 (5th Cir. 2023).

[21] *Martin v. Thompson Tractor Co.*, 486 F.2d 510, 511 (5th Cir. 1973).

[22] *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) (citing 29 U.S.C. § 1132(a)(3)).

participant.[23]  ERISA also authorizes a participant to bring claims on behalf of the Plan itself for breach of fiduciary duty.[24]  Baker alleges her own claims, claims on behalf of other participants, and claims and on behalf of the Plan itself, plausibly pleading that equitable relief is available to her under ERISA.

To the extent 7-Eleven contends that Baker cannot fully represent the interests of current employees with respect to the scope of relief sought, that contention goes to class certification, not standing. [25]

Accordingly, Baker has plausibly pled standing to represent herself, the class, and the Plan itself to pursue Congress-authorized equitable relief and any questions regarding the ultimate scope of relief properly is reserved for the class-certification stage.

### B. Baker plausibly pled 7-Eleven's Wellness Program is not compliant.

ERISA prohibits group health plans from charging similarly-situated participants different premiums "on the basis of any health status-related factor."[26]

ERISA defines what is considered a health status-related factor: health status, medical condition, claims experience, receipt of health care, medical history, genetic information, evidence of insurability, disability.[27]

---

[23] 29 U.S.C. § 1132, § 1002(7).

[24] *Id.* § 1132(a)(2); *Christopher v. Mobil Oil Corp.*, 149 F.R.D. 539, 544 (E.D. Tex. June 1, 1993) ("Under § 409 of ERISA an individual participant does not have standing to assert a breach of fiduciary duty claim in his own right, but may only pursue such a claim on behalf of the entire ERISA plan.") (citing *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985)).

[25] *See Martin*, 486 F.2d at 511 (holding although the individual employee failed to establish unlawful racial discrimination in his own employment, dismissal of the class action was improper).

[26] 29 U.S.C. § 1182(b)(1).

[27] *Id.* § 1182(a)(1)(A)–(H).

However, ERISA provides a carve-out permitting premium discounts or rebates tied to bona fide wellness programs for "health promotion and disease prevention."[28]  That exception applies only if specific conditions are met, including that (1) the full reward is available to all similarly situated individuals, and (2) plan materials clearly describe the program and the availability of a reasonable alternative standard.[29]

The parties cite numerous recent decisions addressing the compliance (or non-compliance) of various tobacco-use wellness programs.  Although the decisions involve similar issues, they involve slight factual and legal variations, and— unsurprisingly—federal courts have reached differing conclusions.[30]  The Court, having considered this evolving body of case law, finds the following analysis most persuasive.

### i.    A tobacco-use surcharge constitutes health-factor discrimination.

7-Eleven argues that charging higher premiums to tobacco users does not facially discriminate based on a health status-related factor under ERISA because tobacco use is merely an activity.  7-Eleven further contends that after *Loper Bright v. Raimondo* the Court must reexamine—and disregard—regulations that expressly address tobacco use surcharges.[31]  Baker responds that tobacco use surcharges squarely fit within ERISA's definition of health status-related factors, as courts have

---

[28] *Id*. § 1182(a)(2)(B).

[29] 42 U.S.C. § 300gg-4(j)(3)(D)–(E); 29 U.S.C. § 1185d(a)(1).

[30] *See Twitter, Inc. v. Taamneh*, 598 U.S. 471, 507 (2023) (Jackson, J., concurring) ("Other cases presenting different allegations and different records may lead to different conclusions.").

[31] 603 U.S. 369, (2024).

recognized since ERISA's enactment and bolstered by the promulgating regulations. The Court agrees with Baker.

Other cases seem to assume tobacco-based surcharges constitute health-factor discrimination. This Court prefers textualism to assumptions. So the Court lays the foundation using its toolbelt of statutory interpretation.

Because the health status-related factors are not defined terms, the Court turns to their ordinary public meaning. "Words are to be understood in their ordinary, everyday meanings—unless the context indicates that they bear a technical sense."[32] Section 1182 lists eight health status-related factors—one of which is "medical history."[33] ERISA does not define what the term "medical history" means. But a dictionary can help with that.

In ordinary English, medical means "of or pertaining to the science or practice of medicine"[34] and history means "a continuous, systematic narrative of past events relating to a particular . . . person."[35] Tobacco use is plainly part of a person's medical history. A person's tobacco use history is routinely recorded, assessed, and relied upon in medical care. Medical history can include things you have done (tobacco) or that have occurred (family health history) that affects your health status. Reading

---

[32] Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 69 (Thompson/West, 2012).

[33] 29 U.S.C. § 1182(a)(1)(A)–(H).

[34] *See, e.g., Webster's Encyclopedic Unabridged Dictionary of the English Language* 890 (1996) (defining "medical").

[35] *See id.* at 674 (defining "history").

"medical history" to exclude tobacco use would ignore how the term is used in medicine and would improperly narrow the statute.

7-Eleven's counters (that tobacco use is an activity instead of a condition and the *Loper Bright* calls us to set aside prior regulations) are unavailing. On activity v. condition, it is true that most of the factors in the list are more akin to conditions than activities (*e.g.*, medical condition, receipt of health care, disability).[36] But the statutory list also includes "evidence of insurability (including conditions arising out of acts of domestic violence)."[37] Domestic violence is an (unlawful) activity rather than a medical condition. Congress did not write a list that excluded activities.

Neither can the Court agree that *Loper Bright* requires setting aside the regulations at issue here. *Loper Bright* does not permit courts to discard valid regulations; it simply removes mandatory deference.[38] Regulations remain persuasive when they align with the statutory text.[39] In other words, under *Chevron*, agencies would automatically win. Under *Loper Bright*, they don't automatically lose. They win when they have the best reading of the law. As they do here. Department of Labor regulations expressly treat tobacco-cessation programs as exceptions to ERISA's general prohibition on health-factor discrimination.[40] That structure only

---

[36] *See e.g.*, 29 U.S.C. § 1182(a)(1)(B), (D), (H).

[37] *Id.* § 1182(a)(1)(G).

[38] *Loper Bright*, 603 U.S. at 403 (noting that "Congress expects courts to do their ordinary job of interpreting statutes, with due respect for the views of the Executive Branch [agencies].").

[39] *Id.*

[40] 29 C.F.R. § 2590.702.

makes sense if tobacco-based surcharges constitute health-status discrimination in the first place. Otherwise, the exception would be unnecessary.

In short, tobacco use is a health status-related factor. Charging higher premiums to tobacco users is therefore facial health-factor discrimination. At the pleading stage, the Court finds that Baker has plausibly pled 7-Eleven's tobacco surcharge constitutes health-factor discrimination, and the burden shifts to 7-Eleven to show its Wellness Program complies with ERISA.[41]

### ii.     Baker plausibly pled 7-Eleven's Wellness Program failed to comply with the statutory requirement of offering the full reward to all similarly-situated participants.

One of the statutory requirements for a compliant Wellness Program is that "the *full reward* under the outcome-based wellness program must be available to all similarly situated individuals."[42]

Baker alleges that 7-Eleven's Program does not offer the *full* reward because it limits the retroactive relief available to some participants.[43] For instance, if a calendar-year wellness-program offers a premium discount and a participant satisfies that alternative on April 1, the plan must still retroactively grant that participant the premium discounts for January, February, and March.[44]

Here, Baker alleges that 7-Eleven fails the full-reward requirement by withholding retroactive relief. 7-Eleven's "complete by March 31 or receive only

---

[41] *See Cunningham v. Cornell Univ.*, 604 U.S. 693, 704 (2025).

[42] *Mehlberg v. Compass Grp. USA, Inc.*, No. 24-CV-04179, 2025 WL 1260700, at *4 (W.D. Mo. Apr. 15, 2025) (quoting 78 Fed. Reg. at 33163 (preamble)).

[43] *Id.*

[44] *Id.*

prospective removal" policy denied retroactive credits within the same plan year.[45] This supports Baker's claim that 7-Eleven failed to satisfy the full-reward requirement, a provision necessary for a complaint wellness program.[46]

Therefore, at the pleading stage, the Court finds that Baker has plausibly pled that 7-Eleven's Wellness Program fails to provide a full reward to similarly-situated individuals based on the limited enrollment time.

### iii.    Baker plausibly pled 7-Eleven's Wellness Program failed to comply with the statutory requirement of disclosing the reasonable alternative standard in *all* plan materials.

A compliant wellness program must disclose the availability of a "reasonable alternative standard to qualify for the reward" in all plan materials.[47] These disclosures must also provide "contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated."[48] However, if the "plan materials merely mention that such a program is available, without describing its terms, this disclosure is not required."[49]

Here, Baker alleges that 7-Eleven failed to comply with the disclosure requirement by omitting the physician-accommodation statement in the Descriptions.[50] Although, Plan materials that merely mention the Wellness Program

---

[45] Doc. 1 at 6–7.

[46] *Id.*

[47] 29 C.F.R. § 2590.702(f)(4)(v); 42 U.S.C. § 300gg-4(j)(3)(E).

[48] 29 C.F.R. § 2590.702(f)(4)(v).

[49] *Id.*

[50] *See* Doc. 50 at 19.

do not need to include the physician-accommodation statement, the Court agrees with Baker that because 7-Eleven's Descriptions discussed specific details regarding the Program, 7-Eleven triggered the full disclosure requirements to include the physician-notice requirement.[51]

Therefore, at the pleading stage, the Court finds that Baker has plausibly pled 7-Eleven's Wellness Program failed to notify participants of the alternative standard for avoiding the tobacco surcharge.

* * *

Baker plausibly pled 7-Eleven unlawfully imposed a discriminatory tobacco surcharge, failed to provide the full reward to all similarly-situated participants, and failed to notify participants of a reasonable alternative standard for avoiding such a surcharge. Therefore, the Court **DENIES** 7-Eleven's Rule 12(b)(6) motion to dismiss Counts I and II.

## C. Baker plausibly pled 7-Eleven breached its fiduciary duties under 29 U.S.C. §§ 1104 and 1106.

Baker alleges 7-Eleven breached its fiduciary duties when administering and communicating the Wellness Program.

ERISA defines a fiduciary to include anyone who exercises discretionary authority in plan administration, or exercises authority or control over plan assets.[52] Conversely, an employer is a settlor, not a fiduciary, when merely establishing a plan

---

[51] *Bokma*, 783 F. Supp. 3d at 906–07.

[52] 29 U.S.C. § 1002(21)(A).

and designing its benefits.[53]  An employer becomes a fiduciary when it goes beyond ministerial tasks and exercises discretion in administering the plan.[54]  However, most courts have concluded that an inverse fiduciary duty does not require plan administrators to ignore plan documents that are not consistent with ERISA.[55]

Here, Baker alleges that 7-Eleven exercised discretionary authority over plan management and asset disposition by collecting tobacco surcharges and refusing to retroactively reimburse participants who completed the Tobacco Cessation courses after the March 31st deadline.[56]  To support that conclusion, Baker alleges that 7-Eleven: (i) decided when surcharges applied or were retroactively refunded; (ii) determined who qualified for the reasonable alternative and whether a participant's physician recommendation would be accommodated; (iii) drafted and disseminated Descriptions and enrollment communications that purported to describe participants' rights; and (iv) failed to review the terms of the wellness program or the Plan to ensure compliance with ERISA.[57]

---

[53] *Lockheed Corp. v. Spink,* 517 U.S. 882, 891 (1996).

[54] *Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996).

[55] *Sec'y of Labor v. Macy's, Inc.*, No. 1:17-CV-541, 2022 WL 407238, at *5 (S.D. Ohio Feb. 10, 2022) ("By its plain language, that statutory provision imposes a fiduciary duty to follow plan documents that are consistent with ERISA. But from that, [plaintiff] asks the Court to infer a fiduciary duty not to follow plan documents that are not consistent with ERISA . . . Thus, from the outset, [plaintiff's] theory of violation of § 1104(a)(1)(D) appears to suffer from the fatal flaw that the plain text of the statute does not support it"); *See Hamrick v. E.I. du Pont de Nemours and Co.*, No. CV-23-238-JLH, 2024 WL 359240, at *5 (D. Del. Jan. 31, 2024) ("Of the courts to have considered the issue, most concluded that §1104(a)(1)(D) does not contemplate the inverse fiduciary duty to not to [sic] follow plan documents that are not consistent with ERISA.")

[56] *See* Doc. 50 at 27.

[57] *Id*.

14

At the motion to dismiss stage, these allegations sufficiently allege that 7-Eleven acted as a fiduciary and engaged in prohibited transactions because 7-Eleven was "not merely choosing certain terms for its plan but also exercising discretionary control throughout the course of the plan year."[58]  Therefore, the Court **DENIES** 7-Eleven's motion to dismiss Count III.

### IV. Conclusion

Accordingly, the Court **DENIES** 7-Eleven's motion to dismiss.

**IT IS SO ORDERED** this 19th day of February, 2026.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[58] *Bokma*, 783 F. Supp. 3d at 900–03.