# N THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| BARBARA A. BAKER, *on behalf of herself and all others similarly situated*, | § § § | |
| Plaintiff | § § § | |
| v. | § | Case No. 3:25-cv-01609-X |
| 7-ELEVEN INC., | § § | |
| Defendant. | § § § | |

---

**DEFENDANT 7-ELEVEN, INC.'S MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) AND BRIEF IN SUPPORT**

---

Samuel M. Schwartz-Fenwick
Illinois State Bar No. 6287340
sschwartz-fenwick@seyfarth.com
Thomas Horan
Illinois State Bar No. 6324075
thoran@seyfarth.com
**SEYFARTH SHAW LLP**
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606

Erin Murray
Texas State Bar No. 24109538
emurray@seyfarth.com
**SEYFARTH SHAW LLP**
2323 Ross Ave., Suite 1660
Dallas, TX 75201

Eric A. Welter, Esq.
State Bar No. 24054612
**WELTER LAW FIRM, P.C.**
20131 Lakeview Center Plaza, Suite 400
Ashburn, VA 20147
(703) 435-8500
(703) 435-8851 (fax)
eaw@welterlaw.com

Amy M. Stewart, Esq.
State Bar No. 24060660
**STEWART LAW GROUP**
1722 Routh Street, Suite 745
Dallas, Texas 75201
(469) 607-2311
astewart@stewartlawgrp.com

*Attorneys for Defendant 7-Eleven, Inc.*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ..................................................................................................... 2

QUESTIONS TO BE CERTIFIED FOR APPEAL ................................................... 5

ARGUMENT .......................................................................................................... 5

I.    LEGAL STANDARD. .................................................................................... 5

II.   THE COURT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY
      APPEAL. .................................................................................................... 6

      A.    The Issues Presented Are Controlling Questions of Law. ...................... 6

      B.    There Are Substantial Grounds for Difference of Opinion on the Issues
            Presented. ............................................................................................. 8

            1.    Substantial Grounds for Difference of Opinion Exist as to Whether
                  the "Full Reward" Requirement Entitles All Participants to
                  Retroactive Refunds. ..................................................................... 9

            2.    Substantial Grounds for Difference of Opinion Exist as to Whether
                  The Notice Requirements Require A Statement That
                  Recommendations Of An Individual's Personal Physician Will Be
                  Accommodated. ........................................................................... 13

            3.    Substantial Grounds for Difference of Opinion Exist as to Whether
                  Plaintiff Has Standing To Pursue The Notice-Related Claims. ............. 14

      C.    Appellate Resolution of the Issues Presented Would Materially Advance
            the Ultimate Termination of this Litigation. ........................................ 15

      D.    A Stay Pending Resolution of Any Interlocutory Appeal is Appropriate. ........... 17

III.  CONCLUSION ......................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Walker*,
  2022 WL 457821 (E.D. La. Feb. 15, 2022) ..........................................................................15, 16

*APCC Servs., Inc. v. Sprint Commc'ns Co., L.P.*,
  297 F. Supp. 2d 90 (D.D.C. 2003) .........................................................................................9

*Asis Internet Servs. v. Active Response Grp.*,
  2008 WL 4279695 (N.D. Cal. Sept. 16, 2008) ......................................................................17

*Atain Specialty Ins. Co. v. Triple PG Sand Dev., LLC*,
  2023 WL 2774459 (S.D. Tex. Apr. 4, 2023) ...........................................................................8

*In re: BP P.L.C. Sec. Litig.*,
  2013 WL 12156398 (S.D. Tex. Jan. 4, 2013) ......................................................................6, 7

*Buescher v. N. Am. Lighting, Inc.*,
  791 F. Supp. 3d 873 (C.D. Ill. 2025) ................................................................................11, 12

*Cheney v. U.S. Dist. Ct. for D.C.*,
  542 U.S. 367 (2004)..............................................................................................................5

*Chirinian v. Travelers Companies, Inc.*,
  No. 24-CV-3956, 2025 WL 2147271 (D. Minn. July 29, 2025) ......................................12, 13

*Coates v. Brazoria County*,
  919 F.Supp.2d 863 (S.D. Tex. 2013) ....................................................................................7

*Crankshaw v. City of Elgin*,
  2020 WL 1866884 (W.D. Tex. Apr. 14, 2020)......................................................................16

*Daco Inv., LLC, v. US Small Bus. Admin.*,
  2024 WL 1887668 (W.D. La. Apr. 29, 2024)......................................................................6, 8

*Doherty v. Bristol-Myers Squbb Co.*,
  No. 24-CV-06628, 2025 WL 3204436 (S.D.N.Y. Nov. 17, 2025).........................................17

*Easom v. US Well Servs., Inc.*,
  527 F.Supp.3d 898 (S.D. Tex. 2021), *rev'd on other grounds,* 37 F.4th 238
  (5th Cir. 2022)......................................................................................................................8

*Equal Emp. Opportunity Comm'n v. Stanley Auto. Enterprises, Inc.*,
  2008 WL 11350061 (N.D. Tex. Apr. 28, 2008) .....................................................................9

*Gates v. Starbucks Corp.*,
　2009 WL 10675787 (N.D. Cal. Oct. 2, 2009)............................................................................9

*Goree v. City of Verona*,
　2020 WL 6051258 (N.D. Miss. Oct. 13, 2020) ........................................................................6

*Greinstein v. Granite Servs. Int'l, Inc.*,
　2023 WL 5167606 (N.D. Tex. June 28, 2023) ...................................................................9, 15

*Hadjipateras v. Pacifica, S.A.*,
　290 F.2d 697 (5th Cir. 1961) ...................................................................................................5

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in
　Amministrazione Straordinaria*,
　921 F.2d 21 (2d Cir. 1990)....................................................................................................6, 7

*Known Litig. Holdings, LLC v. Navigators Ins. Co.*,
　2013 WL 12284920 (D. Conn. Dec. 5, 2013)...........................................................................9

*La. State Conf. of Nat'l Ass'n for the Advancement of Colored People v.
　Louisiana*,
　495 F. Supp. 3d 400 (M.D. La. 2020)................................................................6, 8, 12, 15, 16

*Morales v. OK Trans, Inc.*,
　2024 WL 3223676 (S.D. Tex. June 18, 2024) ........................................................................17

*Noel v. PepsiCo., Inc.*,
　No. 24-CV-7516 (CS), 2026 WL 558118 (S.D.N.Y. Feb. 27, 2026) ..........................10, 11, 12

*O'Brien v. Avco Corp.*,
　309 F. Supp. 703 (S.D.N.Y. 1969) .........................................................................................18

*Ortiz v. Am. Airlines, Inc.*,
　5 F.4th 622 (5th Cir. 2021) ...............................................................................................14, 15

*Plesha v. Ascension Health Alliance*,
　No. 4:24-CV-01459-CMS, 2026 WL 279321 (E.D. Mo. Feb. 3, 2026)
　...............................................................................................................11, 12, 13, 14, 15

*R.J. Reynolds Tobacco Co. v. Hudson*,
　314 F.2d 776 (5th Cir. 1963) ...............................................................................................6, 8

*Reule v. Jackson*,
　114 F.4th 360 (5th Cir. 2024) ................................................................................................14

*Rico v. Flores*,
　481 F.3d 234 (5th Cir. 2007) ...................................................................................................5

iii

*Rivera v. Wyeth-Ayerst Lab'ys*,
  283 F.3d 315 (5th Cir. 2002) ...................................................................................7

*Ruiz v. Estelle*,
  650 F.2d 555 (5th Cir. 1981) .................................................................................17

*Scott v. Ruston La. Hosp. Co., LLC*,
  2017 WL 1364219 (W.D. La. Apr. 12, 2017)...........................................................8

*Pension Benefit Guarantee Corp. ex rel. St. Vincent Catholic Med. Ctrs.*
  *Retirement Plan v. Morgan Stanley Inv. Mgmt. Inc. ("St. Vincent")*,
  712 F.3d 705 (2d Cir. 2013)..............................................................................2, 18

*Thole v. U. S. Bank N.A*,
  590 U.S. 538 (2020)......................................................................................14, 15

*Total Benefit Servs., Inc. v. Grp. Ins. Admin., Inc.*,
  1993 WL 98675 (E.D. La. Mar. 25, 1993) ...........................................................6, 18

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)................................................................................................14

*Watson v. Yolo Cnty. Flood Control & Water Conservation Dist.*,
  2007 WL 4107539 (E.D. Cal. Nov. 16, 2007)........................................................17

*Williams v. Bally's Mgmt. Grp., LLC*,
  No. CV 1:25-00147-MSM-PAS, 2025 WL 3078747 (D.R.I. Nov. 4, 2025)...............11, 12, 13

*Winnett v. Caterpillar, Inc.*,
  2007 WL 2123905 (M.D. Tenn. July 20, 2007) .......................................................9

*Wright v. United Servs. Auto. Ass'n*,
  2024 WL 4681749 (D. Mass. Nov. 5, 2024) ............................................................9

**Other Authorities**

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3930
  (3d ed.) ................................................................................................................6, 9

## PRELIMINARY STATEMENT

Defendant 7-Eleven, Inc. ("7-Eleven") respectfully moves this Court to certify for interlocutory review, pursuant to 28 U.S.C. § 1292(b), this Court's February 19, 2026 Memorandum Opinion and Order denying 7-Eleven's motion to dismiss (the "Order"). (ECF 70.)

The legal standards established in the Order relate to unsettled legal questions and will be determinative at every stage of this litigation. The Court found Plaintiff pleaded a plausible claim by alleging the tobacco cessation program provided retroactive tobacco surcharge refunds to individuals who completed the program by March 31 in a plan year and provided only prospective relief to individuals who quit later in the plan year. Inherent in this finding is the Court's holding that a lawful ERISA plan requires retroactive relief for all participants who complete a tobacco cessation program—a legal proposition explicitly rejected by other courts.

The Court similarly found plausible Plaintiff's claim that the Plan's disclosures were unlawful as they did not adequately inform participants of an alternative to telephonic tobacco cessation counseling. Even accepting the allegations in the pleadings as true, the plausibility of that claim, too, turned on interpreting whether the statute actually requires the disclosures Plaintiff claimed were lacking.

These two legal holdings are not the settled view of the law. Indeed, courts across the country are grappling with these same legal questions in dozens of cases virtually identical to this one. This Court rightly observed in its February 19 order, courts considering motions to dismiss in those cases have "reached different conclusions" on the legal issues this Court was asked to decide. (ECF 70 at 8.) Indeed, the same month the Court issued the Order, two other courts granted motions to dismiss nearly identical claims. To date, no appellate court has weighed in on whether Plaintiff's theory states a viable claim under ERISA, nor otherwise addressed the correct interpretation of the at-issue statutory requirements. The disparate

conclusions reached by sister district courts around the country underscores the need for interlocutory appellate review of the Order. Indeed, if the Fifth Circuit agrees with 7-Eleven's position that Plaintiff accuses 7-Eleven of violating requirements the law does not impose, this litigation would end.

The statutory conditions for immediate appeal under Section 1292(b)—the involvement of a controlling question of law, on which there is substantial ground for difference of opinion, where immediate appeal will materially advance the ultimate termination of the litigation—are thus satisfied. *See* 28 U.S.C. § 1292(b). Resolving these statutory interpretation questions at this stage is also particularly warranted here because discovery in ERISA class actions is entirely "asymmetric" and comes at an "ominous" price, easily running into the millions of dollars for a defendant. *Pension Benefit Guarantee Corp. ex rel. St. Vincent Catholic Med. Ctrs. Retirement Plan v. Morgan Stanley Inv. Mgmt. Inc. ("St. Vincent")*, 712 F.3d 705, 719 (2d Cir. 2013). Thus, waiting until after a final judgment would limit the potential benefit of appealing, as 7-Eleven would face significant burden and expense in the interim.

This Court should grant 7-Eleven's motion for certification so that the threshold statutory interpretation questions can be resolved by the Fifth Circuit before the parties and the Court expend the time and resources needed to litigate a claim the Court of Appeals may find is not viable in the first place.

## **BACKGROUND**

The Complaint takes issue with the tobacco cessation program in the 7-Eleven Comprehensive Welfare Benefit Plan (the "Plan"). Plaintiff does not argue it is unlawful to incentivize plan participants to quit smoking, as the ability of plans to incentivize healthier choices among participants is enshrined in the law. Due to the clarity of the law, Plaintiff also concedes it is permissible for benefit plans to charge tobacco users a premium surcharge. Despite

2

these concessions, Plaintiff tries to argue in the Complaint that she and fellow tobacco users were unlawfully targeted by the Plan's tobacco surcharge and by alleged omissions in the Plan's disclosures about its tobacco cessation program.

For instance, Plaintiff alleges that a lawful plan must be structured and administered such that the full tobacco surcharge paid in a calendar year is refunded to anyone who completes a tobacco cessation program at any point during that year. Thus, under Plaintiff's view of the law, if someone smokes all year and only completes the cessation program (regardless of whether they quit smoking due to this program) on December 15, this individual is due all tobacco surcharges they paid for the entire year. Employing this theory, she claims the Plan's tobacco cessation program is *per se* unlawful because: 1) it allegedly only paid retroactive tobacco surcharges to those who completed a tobacco cessation program by March 31 in any given year and 2) individuals who completed the program after March 31 in any given year allegedly only received prospective relief from paying the tobacco surcharge. (ECF 1 at ¶ 24.)

Plaintiff further alleges the Plan's communications to participants regarding the tobacco cessation program were unlawful because they omitted language of her "right to work with her physician to develop a tailored reasonable alternative" in lieu of the standard telephonic tobacco cessation counseling. (ECF 50 at 19.) Plaintiff nowhere alleges what physician assistance she might have needed to complete telephonic tobacco cessation counseling, nor how omission of a statement about working with her physician might have prevented herself from enrolling in the tobacco cessation program.

In moving to dismiss, 7-Eleven argued Plaintiff's claims should be dismissed because—even on the facts alleged—the Plan complied with the law. (ECF 45 at 20–21.) 7-Eleven argued, as a matter of law, that Plaintiff's claim that the Plan lacked sufficient retroactive relief imposes

a requirement the statue does not, and that the Plan's design (including providing prospective relief only to participants who completed the cessation program after April 1) provided those participants the same "full reward" (i.e., lower monthly premiums) available to non-tobacco users at the same point in the Plan year. (ECF 45 at 21–21.) 7-Eleven further argued its notice to participants complied with the statutory requirements, and that—in any event—Plaintiff lacked standing to pursue the notice-related claims, because she made no allegations about how those alleged notice violations caused her injury. (ECF 45 at 14–15, 22.)

In denying the motion, the Court found Plaintiff plausibly alleged the Plan denied retroactive credits to some participants within the Plan year. (ECF 70 at 12.) Because of this, the Court found Plaintiff "plausibly pled that 7-Eleven's Wellness Program fails to provide a full reward to similarly-situated individuals based on the limited enrollment time." (ECF 70 at 12.) Inherent in this finding is the legal determination that the "full reward" requirement carries a requirement for retroactive relief at any time in the Plan year.

The Court similarly found the alleged omission of a "physician accommodation statement" in Plan-related communications "plausibly pled 7-Eleven's Wellness Program failed to notify participants of the alternative standard for avoiding the tobacco surcharge. (ECF 70 at 12–13.) The Court also found Plaintiff had standing to sue on this alleged notice violation because "ERISA disclosure violations can support standing when the omission interferes with a participant's ability to understand and exercise plan rights." (ECF 70 at 5–6.) Inherent in these findings is the legal determination that the disclosure requirements in operative law require inclusion of a "physician accommodation statement."

As a result of these, and other, determinations detailed in the Order, the Court denied 7-Eleven's motion to dismiss. (ECF 70 at 15.)

**QUESTIONS TO BE CERTIFIED FOR APPEAL**

1.      Does the statutory requirement for a compliant Wellness Program that "the full reward under the outcome-based wellness program must be available to all similarly situated individuals" require retroactive relief be made available to all plan participants, even if they fail to satisfy the alternative standard prior to the plan's established deadline to qualify for more than prospective relief?

2.      Does the requirement to disclose the availability of a "reasonable alternative standard to qualify for the reward" require a "statement that recommendations of an individual's personal physician will be accommodated"?

3.      Does the Plaintiff have standing to sue regarding claimed notice violations where she does not allege the information allegedly omitted from the notice impacted her decision not to participate in the tobacco cessation program?

**ARGUMENT**

**I.      LEGAL STANDARD.**

A court may certify an interlocutory appeal under 28 U.S.C. § 1292(b) "where (1) a controlling question of law is involved, (2) there is substantial ground for difference of opinion about the question of law, and (3) immediate appeal will materially advance the ultimate termination of the litigation." *Rico v. Flores*, 481 F.3d 234, 238 (5th Cir. 2007); 28 U.S.C. § 1292(b). The decision to permit interlocutory appeal under Section 1292(b) lies within the district court's "sound discretion." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 405 n.9 (2004). This analysis should be conducted in "light of the underlying purpose reflected in the statute." *Hadjipateras v. Pacifica, S.A.*, 290 F.2d 697, 702 (5th Cir. 1961). Section 1292(b) recognizes that "orderly administration is frustrated by the necessity of a waste of precious judicial time while the case grinds through to a final judgment as the sole medium through which to test the correctness of some isolated identifiable point . . . of law . . . , upon which in a realistic way the whole case or defense will turn." *Id.* at 703. Accordingly, courts in the Fifth Circuit have certified interlocutory appeal under Section 1292(b) when it will "avoid protracted and expensive

5

litigation." *Goree v. City of Verona*, 2020 WL 6051258, at *1 (N.D. Miss. Oct. 13, 2020); *Total Benefit Servs., Inc. v. Grp. Ins. Admin., Inc.*, 1993 WL 98675, at *1 (E.D. La. Mar. 25, 1993).

## II.    THE COURT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY APPEAL.

### A.    The Issues Presented Are Controlling Questions of Law.

"In determining if an issue is a controlling question of law, the Court asks whether the issue has 'potential to have some impact on the course of the litigation.'" *La. State Conf. of Nat'l Ass'n for the Advancement of Colored People v. Louisiana*, 495 F. Supp. 3d 400, 413 (M.D. La. 2020). "Although the resolution of an issue need not necessarily terminate an action in order to be 'controlling,' it is clear that a question of law is 'controlling' if reversal of the [order] would terminate the action." *In re: BP P.L.C. Sec. Litig.*, 2013 WL 12156398, at *2 (S.D. Tex. Jan. 4, 2013) (internal citation omitted); Charles A. Wright, et al., Federal Practice and Procedure § 3930 (3d ed.) ("There is no doubt that a question is 'controlling' if its incorrect disposition would require reversal of a final judgment."); *see R.J. Reynolds Tobacco Co. v. Hudson*, 314 F.2d 776, 778 (5th Cir. 1963) (interlocutory review under Section 1292(b) appropriate because "[i]f the contentions of [defendant] are correct, the case should be dismissed and judgment granted to the defendant as a matter of law"); *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) (internal citations omitted) ("Although the resolution of an issue need not necessarily terminate an action in order to be 'controlling,' it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action," such as where the order to be certified "involve[s] issues of . . . jurisdiction."). Any such controlling question must also be legal, not factual, in nature such that "the court of appeals could decide [it] quickly and cleanly without having to study the record." *Daco Inv., LLC, v. US Small Bus. Admin.*, 2024 WL

6

1887668, at *3 (W.D. La. Apr. 29, 2024); *In re: BP P.L.C. Sec. Litig.*, 2013 WL 12156398, at *2.

"[P]urely legal arguments based on the face of Plaintiff's complaint," absent factual disputes about the allegations contained therein, present clear questions of law. *In re: BP P.L.C. Sec. Litig.*, 2013 WL 12156398, at *2 (while court ultimately denied motion to certify interlocutory appeal, it had "no difficulty" determining it involved controlling questions of law).

To certify the Order under 28 U.S.C. § 1292(b), the Court need only conclude that one of the issues presented satisfies the requirements for interlocutory review. Nonetheless, each issue presented in this Motion constitutes a "controlling question of law."

Questions are suitable for interlocutory review where—as in the first two issues raised by 7-Eleven—they involve the proper legal standard, rather than the "application of settled law to disputed facts." *Coates v. Brazoria County*, 919 F.Supp.2d 863, 871 (S.D. Tex. 2013) (internal citation omitted). The Court's determination that Plaintiff pleaded a plausible claim here stemmed directly from the Court's determination of the legal standard for compliant wellness programs and related notice obligations—the same standard that will govern every stage of this case. Those legal standards, then, present controlling questions of law, suitable for interlocutory review.

The third issue presented in the Motion (standing) is similarly appropriate for interlocutory appeal because, if the Fifth Circuit agrees with 7-Eleven's position, the notice claim will end. *Rivera v. Wyeth-Ayerst Lab'ys*, 283 F.3d 315, 319 (5th Cir. 2002) ("Standing is a question of law . . . ."); *see In re: BP P.L.C. Sec. Litig.*, 2013 WL 12156398, at *2 (questions of law are controlling where reversal would terminate the litigation); *Klinghoffer*, 921 F.2d at 24 (jurisdictional issues—like standing—are "clear" controlling questions of law). 7-Eleven asserts

7

that Plaintiff failed to plead any causal connection between the claimed notice failures and her decision not to enroll in the cessation program. If the Fifth Circuit agrees with 7-Eleven, then the notice claims must be dismissed for lack of subject matter jurisdiction.

Resolution of the issues on which 7-Eleven seeks interlocutory review does not require review of factual disputes but can be resolved on appeal "quickly and cleanly without having to study the record." *Daco Inv., LLC*, 2024 WL 1887668, at *3. Further, because deciding these legal questions in 7-Eleven's favor could end this case, the issues presented here are "controlling questions of law" as provided in Section 1292(b). *See R.J. Reynolds Tobacco Co.*, 314 F.2d at 778.

**B.    There Are Substantial Grounds for Difference of Opinion on the Issues Presented.**

Substantial grounds for difference of opinion "arise[] out of a genuine doubt as to the correct applicable legal standard relied on in the order." *La. State Conf. of Nat'l Ass'n for the Advancement of Colored People*, 495 F.Supp.3d at 414. Where courts "disagree[] on a particular legal question," and "fair-minded jurists might reach contradictory conclusions," there are substantial grounds for difference of opinion on that question. *Scott v. Ruston La. Hosp. Co., LLC*, 2017 WL 1364219, at *5 (W.D. La. Apr. 12, 2017); *Easom v. US Well Servs., Inc.*, 527 F.Supp.3d 898, 917 (S.D. Tex. 2021), *rev'd on other grounds,* 37 F.4th 238 (5th Cir. 2022). Any such disagreement must arise between courts, not just the litigants. *Atain Specialty Ins. Co. v. Triple PG Sand Dev., LLC*, 2023 WL 2774459, at *1 (S.D. Tex. Apr. 4, 2023).

Here, substantial grounds for difference of opinion exist with respect to each issue presented. For purposes of this Motion, the relevant question is not which possible statutory interpretation is correct. Rather, what is relevant is only that there is room for disagreement as to what the correct answer to the question might be, such that certification would enable the Fifth

Circuit to clarify the applicable statutory interpretation and provide substantial guidance that would impact this case and others under this emerging legal theory. *See Equal Emp. Opportunity Comm'n v. Stanley Auto. Enterprises, Inc*., 2008 WL 11350061, at \*1 (N.D. Tex. Apr. 28, 2008) (interlocutory appeal is particularly appropriate as to a difficult legal question that remains "unresolved in the Fifth Circuit"). This factor can be satisfied "even if the court is 'confident in its decision.'" *Greinstein v. Granite Servs. Int'l, Inc*., 2023 WL 5167606, at \*3 (N.D. Tex. June 28, 2023) (quoting *Hopkins v. Cornerstone Am*., 2007 WL 9772306 (N.D. Tex. Aug. 1, 2007)).

Moreover, "[t]he level of uncertainty required to find a substantial ground for difference of opinion should be adjusted to meet the importance of the question in the context of the specific case." Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3930 (3d ed.). In light of this principle, courts throughout the country have held that "[w]here proceedings that threaten to endure for several years depend on an initial question of jurisdiction or the like, certification may be justified even if there is a relatively low level of uncertainty." *APCC Servs., Inc. v. Sprint Commc'ns Co., L.P*., 297 F. Supp. 2d 90, 98 (D.D.C. 2003) (cleaned up); *see also, e.g.*, *Wright v. United Servs. Auto. Ass'n*, 2024 WL 4681749, at \*2 n.4 (D. Mass. Nov. 5, 2024); *Known Litig. Holdings, LLC v. Navigators Ins. Co*., 2013 WL 12284920, at \*3 (D. Conn. Dec. 5, 2013); *Gates v. Starbucks Corp*., 2009 WL 10675787, at \*1 (N.D. Cal. Oct. 2, 2009); *Winnett v. Caterpillar, Inc*., 2007 WL 2123905, at \*4 (M.D. Tenn. July 20, 2007).

> **1.    Substantial Grounds for Difference of Opinion Exist as to Whether the "Full Reward" Requirement Entitles All Participants to Retroactive Refunds.**

In the Order, the Court found that "if a calendar-year wellness-program offers a premium discount and a participant satisfies that alternative on April 1, the plan must still retroactively grant that participant the premium discounts for January, February, and March." (ECF 70 at 11.) Because

9

Plaintiff alleged the Plan failed to satisfy that legal requirement, the Court found Plaintiff's claim plausible. (ECF 70 at 11–12.)

As the Court acknowledged, there have been "numerous" recent decisions on similar claims in courts across the county, and "federal courts have reached different conclusions." (ECF 70 at 8.) The extent to which the "full reward" requirement compels retroactive reimbursement of the tobacco surcharge is one area in which those conclusions have differed.

To begin with, however, there is no dispute that the Plan provides a "full reward" (including retroactive rebating) to participants who complete the cessation program by March 31 in any Plan year. Because the Plan continues to allow participants to obtain prospective relief after this deadline, it is more generous than the statute requires, not less.

Particularly informative on this point is the decision in *Noel v. PepsiCo, Inc.* There, the plaintiff challenged a plan that did not offer any retroactive relief. The Pepsi plan allowed participants who completed a tobacco cessation program between May 1 and November 30 to avoid paying any tobacco surcharge for the following plan year, while also allowing prospective relief to participants who completed the cessation program outside that window, without reimbursement of premiums paid prior to completion. *See Noel v. PepsiCo., Inc.*, No. 24-CV-7516 (CS), 2026 WL 558118, at *1 (S.D.N.Y. Feb. 27, 2026). In rejecting the plaintiff's argument that the law mandated a retroactive reimbursement of the surcharge to those who completed the tobacco cessation program, the court reasoned "[t]hat Defendants choose to offer the opportunity for a prospective reward for those who complete the program after the cutoff does not mean they cannot impose a cutoff for the full-year reward." *Id.* at *12 ("This no-good-deed-goes-unpunished interpretation is contrary to logic."). In reaching this holding, the court relied in part on guidance from the DOL, which explains:

10

Q8: A group health plan charges participants a tobacco premium surcharge but also provides an opportunity to avoid the surcharge if, at the time of enrollment or annual reenrollment, the participant agrees to participate in (and subsequently completes within the plan year) a tobacco cessation educational program. A participant who is a tobacco user initially declines the opportunity to participate in the tobacco cessation program, but joins in the middle of the plan year. Is the plan required to provide the opportunity to avoid the surcharge or provide another reward to the individual for that plan year?

No. If a participant is provided a reasonable opportunity to enroll in the tobacco cessation program at the beginning of the plan year and qualify for the reward (*i.e.*, avoiding the tobacco premium surcharge) under the program, the plan is not required (but is permitted) to provide another opportunity to avoid the tobacco premium surcharge until renewal or reenrollment for coverage for the next plan year. Nothing, however, prevents a plan or issuer from allowing rewards (including pro-rated rewards) for mid-year enrollment in a wellness program for that plan year.

*Id.* at *5 (quoting *FAQs About Affordable Care Act Implementation (Part XVIII) and Mental Health Parity Implementation*, U.S. Dep't of Lab. (Jan. 9, 2014), https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center/faqs/aca-part-18).

As in *Noel*, the court in *Plesha v. Ascension Health Alliance*, No. 4:24-CV-01459-CMS, 2026 WL 279321 (E.D. Mo. Feb. 3, 2026) also rejected a challenge to a tobacco cessation program that provided no retroactive surcharges to those who completed the program and instead only provided prospective relief from the surcharge beginning the month after cessation courses are completed. *Id.* at *4. Reasoning that the "full reward" was simply the absence of paying a surcharge, the court there found the plan complied with the law and rejected an interpretation that would have required rebates for amounts paid before completing cessation courses. *Id.* at *4-5 (finding ERISA "does not impose a retroactive reimbursement requirement for tobacco cessation surcharges"); *see also Williams v. Bally's Mgmt. Grp., LLC*, No. CV 1:25-00147-MSM-PAS, 2025 WL 3078747, at *11 (D.R.I. Nov. 4, 2025) (dismissing claim without resolving factual dispute as to whether plan actually paid retroactive rebates, because "full reward" requirement "as a matter of law . . . do[es] not require . . . retroactive reimbursement of the tobacco surcharge"); *Buescher v. N. Am. Lighting, Inc.*, 791 F. Supp. 3d 873, 907 (C.D. Ill. 2025)

(dismissing claims based on prospective-only waiver of tobacco surcharge; plan not unlawful where it allows tobacco users who complete cessation program in plan year to avoid surcharge for subsequent year (without retroactive relief)); *Chirinian v. Travelers Companies, Inc.*, No. 24-CV-3956, 2025 WL 2147271, at *9 (D. Minn. July 29, 2025) (a requirement that participants be allowed to enroll in and complete tobacco cessation program whenever they want, with guarantees of retroactive reimbursement, "would defeat the purpose of the 'frequency of opportunity' requirement" in the statute, which requires participants to be provided an opportunity "once per year" to receive the "full reward").

The Plan here is more generous than the ones found lawful in *Noel* and *Plesha*. Where the plans in those matters provided no opportunity for retroactive rebating of payments, the Plan here provides retroactive rebates to anyone who completes a cessation course by March 31. Like the plans in *Plesha* and *Noel*, the Plan also provides the opportunity for prospective relief to anyone who completes the program after the Plan's deadline. That plans less generous than the Plan have been deemed lawful underscores the unsettled nature of the law on this question.

Because the DOL Q&A appears to expressly condone the alleged structure of the Plan, and the holdings in *Noel*, *Buescher*, *Plesha*, and *Williams* all reject the suggestion that a compliant program must entitle all participants to retroactive rebating of tobacco surcharges, there is clearly disagreement among courts that raises genuine doubt concerning the correct legal standard. *See La. State Conf. of Nat'l Ass'n for the Advancement of Colored People*, 495 F. Supp. 3d at 414. This legal issue thus provides substantial grounds for difference of opinion calling out for resolution by the Fifth Circuit.

**2.      Substantial Grounds for Difference of Opinion Exist as to Whether The Notice Requirements Require A Statement That Recommendations Of An Individual's Personal Physician Will Be Accommodated.**

There are likewise substantial grounds for difference of opinion concerning the plausibility of Plaintiff's alleged notice-related claims. The Court found Plaintiff stated a plausible claim by alleging 7-Eleven's communications to participants violated the law by allegedly "omitting the physician-accommodation statement in the Descriptions." (ECF 70 at 12.) In its motion to dismiss papers, 7-Eleven argued that this physician-accommodation statement is *not* required by ERISA, but instead is created solely in the underlying regulations. (ECF 53 at 10–11.) Thus, 7-Eleven argued, the participant notices satisfied all statutory disclosure requirements.

The Order rejected this argument and instead held that the notice obligations must include that "physician-accommodation statement." (ECF 70 at 12.)  While many courts have agreed with this reasoning, the law still remains very much undecided on this question as evidenced by the courts that continue to expressly reject this legal rationale. *See Plesha*, 2026 WL 279321 at *8 (notice claims failed to state a claim where asserted violations were based on requirements not founded in the statute); *Williams*, 2025 WL 3078747 at *13 (communications failed to plead viable claim for breach of statutory notice obligations). For instance, while it declined to decide the question, based on the manner it was presented there, the *Chirinian* court acknowledged that the "physician accommodation" verbiage is not found anywhere in the statute. *See Chirinian*, 2025 WL 2147271 at *10–11.

Given the foundational nature of this statutory interpretation question to Plaintiff's claim, and the disagreement among courts as to the appropriate legal standard for assessing what the notice requires, interlocutory review is warranted.

13

### 3.    Substantial Grounds for Difference of Opinion Exist as to Whether Plaintiff Has Standing To Pursue The Notice-Related Claims.

In the Motion, 7-Eleven argued Plaintiff lacked standing to pursue her notice-related claims because she failed to allege how the alleged omission of physician-accommodation language in Plan communication materials caused her to continue to pay the tobacco surcharge. (ECF 45 at 15.) 7-Eleven argued it is insufficient to allege a bare a statutory violation; rather, to plead a viable claim, a plaintiff must plead a connection between a legal violation and injury.

It is irrefutable that it is Plaintiff's burden to show, for each claim asserted, that she has satisfied the "irreducible constitutional minimum" of Article III standing. *See Reule v. Jackson*, 114 F.4th 360, 366 (5th Cir. 2024). The Supreme Court has made clear "[t]here is no ERISA exception to Article III." *Thole v. U. S. Bank N.A*, 590 U.S. 538, 547 (2020). As such, Plaintiff must allege not only that Defendant committed a violation of the law (*i.e.*, provided a deficient notice) and that she suffered a concrete injury (*i.e.*, paid additional health care premiums), but that she suffered the claimed injury *because of* the defendant's alleged violation of law. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 426–27 (2021).

Because Plaintiff makes no allegation that she would have acted differently (and thus avoided her claimed injury) had the allegedly required disclosures been made, she lacks standing to pursue a claim regarding those alleged disclosure violations. *See Ortiz v. Am. Airlines, Inc.*, 5 F.4th 622, 629 (5th Cir. 2021) (no Article III causation where plaintiffs failed to show they would have acted differently "in a counterfactual world").

The court in *Plesha*, analyzed this exact standing question with respect to a tobacco surcharge notice claim and dismissed the claim because plaintiff "d[id] not claim that she personally needed to use or would have used an accommodating physician's recommendation instead of the wellness program," and so "d[id] not allege how Defendant's Plan disclosures

14

caused her to suffer these monetary injuries." *Id.* The Plaintiff here, like the plaintiff in *Plesha*, "has not demonstrated how her behavior would have changed with a compliant notice." 2026 WL 279321 at *7. The court further reasoned "[t]he cause of Plaintiff's increased expenses is not the notice given in the disclosures about the Plan, but the structure of the Plan itself. Plaintiff has not demonstrated how her behavior would have changed with a compliant notice. Put another way, Plaintiff would be in the exact same place with or without the purported defects in the notice." *Id.*

Because the Order's holding regarding standing is inconsistent with *Thole* and its progeny, including *Plesha*, placing this question before the Fifth Circuit may end this claim. Thus, interlocutory review on this unsettled question is appropriate.

### C.   Appellate Resolution of the Issues Presented Would Materially Advance the Ultimate Termination of this Litigation.

"Because Section 1292(b) is designed to minimize burdens by accelerating or simplifying trial court proceedings," a key consideration is whether immediate appeal will "speed up the litigation." *Greinstein v. Granite Servs. Int'l, Inc.*, 2023 WL 5167606, at *3 (N.D. Tex. June 28, 2023) (internal quotation marks and citation omitted). Section 1292(b) does not require that the appeal "certainly advance the termination of the litigation" but only requires that it "*may* advance the ultimate termination of the litigation if permitted." *La. State Conf. of Nat'l Ass'n for the Advancement of Colored People*, 495 F. Supp. 3d at 416. This inquiry "is inherently related" to the controlling-question inquiry: Where an immediate appeal may "result[] in a reversal and dismissal" of a plaintiff's claims, the third prong is satisfied. *Adams v. Walker*, 2022 WL 457821, at *3 (E.D. La. Feb. 15, 2022).

This requirement is plainly met here. As explained above, interlocutory appeal may materially advance the termination of the litigation because reversal on any of the legal questions

raised herein would likely end the lawsuit, "mak[ing] further action … futile or unnecessary." *See La. State Conf. of Nat'l Ass'n for the Advancement of Colored People*, 495 F.Supp.3d at 416. Because immediate review could lead to this suit's termination, the third prong of the analysis is satisfied. *See Adams*, 2022 WL 457821, at *3; *Crankshaw v. City of Elgin*, 2020 WL 1866884, at *4 (W.D. Tex. Apr. 14, 2020) (finding that an interlocutory appeal "ha[d] the potential to materially advance the termination of th[e] litigation" because resolution of the question raised "would conclude the litigation before the Court").

Not only could interlocutory appeal "advance the ultimate termination of the litigation," it could save the parties—and this Court—from spending unnecessary time and resources litigating the case in the interim. At the very least, interlocutory review will "simplify the issues before the Court" by providing guidance on questions of statutory interpretation that are central to Plaintiff's claims. *Adams*, 2022 WL 457821, at *3.

Consistent with 7-Eleven's request here, courts in other jurisdictions have recently used § 1292(b) as a vehicle for appellate consideration of novel ERISA theories before requiring the parties to litigate the entire matter before obtaining foundational guidance as to the viability of plaintiffs' legal theories. For instance, in *Konya v. Lockheed Martin Corp.*, a court considering a different, but similarly untested ERISA class action claims, certified its order denying defendants' motion to dismiss for interlocutory review. *See* No. CV 24-750-BAH, 2025 WL 2050997, at *5 (D. Md. July 22, 2025). In doing so, the court noted the burden on defendant of moving into discovery without certainty on the ultimate viability of the legal theories underlying the claims, and ultimately held—regardless of outcome—a "final answer" from the appellate court would achieve the purpose that allows for review under § 1292(B). *See id.* at *2, 5. The Fourth Circuit subsequently granted the petition for review, and the case is pending on that

16

court's docket at No. 25-2061. A second court that denied a motion to dismiss under the same

theory also certified its order for interlocutory review while staying the underlying action,

finding "judicial economy strongly favors staying the proceedings pending resolution of the legal

question at the core of this action[.]" *See Doherty v. Bristol-Myers Squbb Co.*, No. 24-CV-06628,

2025 WL 3204436, at *2 (S.D.N.Y. Nov. 17, 2025). The petition for review of that case remains

pending before the Second Circuit. The same considerations motivating those courts—the burden

and expense of litigation, the novel nature of the claims asserted, and the interests of judicial

economy—similarly motivate in favor of interlocutory review here.

> **D.      A Stay Pending Resolution of Any Interlocutory Appeal is Appropriate.**

The Fifth Circuit holds that in the context of considering a motion for a stay pending

appeal:

> [T]he movant need not always show a "probability" of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay.

*Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981).

This Court has the power to stay these proceedings during the pendency of an

interlocutory appeal both "[b]y statute" and pursuant to its "inherent power to control its own

docket and calendar." *Watson v. Yolo Cnty. Flood Control & Water Conservation Dist.*, 2007

WL 4107539, at *2-3 (E.D. Cal. Nov. 16, 2007); *see also, e.g.*, *Morales v. OK Trans, Inc.*, 2024

WL 3223676, at *3 (S.D. Tex. June 18, 2024) (granting stay pending interlocutory appeal

pursuant to the court's "inherent power to stay proceedings"); *Asis Internet Servs. v. Active

Response Grp.*, 2008 WL 4279695, at *3-4 (N.D. Cal. Sept. 16, 2008) ("When considering a stay

pending appeal pursuant to § 1292(b), the Court has broad discretion to decide whether a stay is

17

appropriate to promote economy of time and effort for itself, for counsel, and for litigants." (cleaned up)).

A stay is warranted here "to conserve the Court's and the parties' resources pending resolution of [a] determinative issue in this case" via interlocutory appeal *5.934 Acres of Land*, 2023 WL 7140149, at *2. Indeed, a stay is particularly prudent "when, as here, the determination of a preliminary question may dispose of the entire suit." *O'Brien v. Avco Corp.*, 309 F. Supp. 703, 705 (S.D.N.Y. 1969) (staying proceedings during pendency of Section 1292(b) appeal on jurisdiction).

If this action proceeds concurrently with an interlocutory appeal, 7-Eleven would suffer the significant prejudice of having to expend the money and time to litigate claims that may be legally unsound. As the Second Circuit has identified, the burdens of moving into discovery in an ERISA class action fall disproportionately on the defendant. *See St. Vincent*, 712 F.3d at 719. Thus, the absence of a stay would effectively negate the entire purpose of an interlocutory appeal, which is in part to advance the ultimate termination of the litigation. *See Total Ben. Servs.*, *Inc. v. Group Ins. Admin., Inc.*, No. 98-2386, 1993 WL 98675, *3 (E.D. La. March 25, 1993).

## III.    CONCLUSION

Because each element of 28 U.S.C. § 1292(b) is satisfied here, and immediate appellate review would advance the statute's underlying purpose, Defendant respectfully requests the Court certify an interlocutory appeal of the Order denying the Motion to Dismiss (ECF 70).

18

Dated: March 18, 2026                    Respectfully submitted,

                                         Seyfarth Shaw LLP


                                         By: */s/ Samuel M. Schwartz-Fenwick*
                                         Samuel M. Schwartz-Fenwick
                                         Illinois State Bar No. 6287340
                                         sschwartz-fenwick@seyfarth.com
                                         Thomas Horan
                                         Illinois State Bar No. 6324075
                                         thoran@seyfarth.com
                                         **SEYFARTH SHAW LLP**
                                         233 South Wacker Drive, Suite 8000
                                         Chicago, Illinois 60606

                                         Erin Murray
                                         Texas State Bar No. 24109538
                                         emurray@seyfarth.com
                                         **SEYFARTH SHAW LLP**
                                         2323 Ross Ave., Suite 1660
                                         Dallas, TX 75201

                                         Eric A. Welter, Esq.
                                         State Bar No. 24054612
                                         **WELTER LAW FIRM, P.C.**
                                         20131 Lakeview Center Plaza, Suite 400
                                         Ashburn, VA 20147
                                         (703) 435-8500
                                         (703) 435-8851 (fax)
                                         eaw@welterlaw.com

                                         Amy M. Stewart, Esq.
                                         State Bar No. 24060660
                                         **STEWART LAW GROUP**
                                         1722 Routh Street, Suite 745
                                         Dallas, Texas 75201
                                         (469) 607-2311
                                         astewart@stewartlawgrp.com


    ***Attorneys for Defendant 7-Eleven, Inc.***


19

## CERTIFICATE OF CONFERENCE

On March 16, 2026, I conferred with counsel of record for the Plaintiff via email regarding this motion. Plaintiff's counsel indicated Plaintiff opposes Defendant's motion for interlocutory review based on review of the Court's ruling.


*/s/ Samuel M. Schwartz-Fenwick* _____
Samuel M. Schwartz-Fenwick

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of March, 2026, I electronically filed a true and correct copy of the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Samuel M. Schwartz-Fenwick* _____
Samuel M. Schwartz-Fenwick

20