**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| BARBARA A. BAKER, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>7-ELEVEN INC.,<br><br>Defendant. | **Civil Action No.: 3:25-cv-01609-X**<br>Judge Brantley Starr |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**SIRI & GLIMSTAD LLP**

Oren Faircloth *(pro hac vice)*
William H. Payne, IV (pro hac vice)
100 Pearl Street
14th Floor - #16946876
Hartford, CT 06103
E: ofaircloth@sirillp.com
E: wpayne@sirillp.com

*Attorneys for Plaintiff*

**KENDALL LAW GROUP, PLLC**
Joe Kendall (Texas Bar No. 11260700)
3811 Turtle Creek Blvd., Suite 825
Dallas, Texas 75219
Tel: (214) 744-3000
jkendall@kendalllawgroup.com

*Local Counsel for Plaintiff*

## TABLE OF CONTENTS

I. INTRODUCTION....1
II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND .... 2
III. THE SETTLEMENT NEGOTIATIONS AND AGREEMENT .... 3
A. The Settlement Class.... 4
B. Calculation of Class Member Payments and Distribution Timing..... 4
C. Release and Covenant Not to Sue .... 5
D. Anticipated Notice Program .... 5
E. Attorneys' Fees and Costs and Case Contribution Award.... 5
IV. ARGUMENT .... 6
A. Legal Authority .... 6
1. The Settlement Class is so Numerous that Joinder is Impracticable. .... 9
2. Questions of Law and Fact are Common to the Settlement Class..... 9
3. Plaintiff's Claims and Defenses are Typical of the Settlement Class.... 10
4. Plaintiff and Counsel Will Provide Fair and Adequate Representation for the Settlement Class. .... 10
5. Certification Under Rule 23(b)(1) Is Appropriate Because Separate Actions Would Create a Risk of Inconsistent Adjudications or Impair Absent Members' Interests. .... 11
B. The Settlement Terms Are Fair, Reasonable, and Adequate. .... 12
1. Class Representative and Class Counsel Have Adequately Represented the Class. (Fed. R. Civ. P. 23(e)(2)(A)). .... 13
2. The Settlement is the Product of Good-Faith Arm's Length Negotiations and is Absent of Any Collusion (Fed. R. Civ. P. 23(e)(2)(B)). .... 14
3. The Settlement Agreement provides substantial relief to the Settlement Class, in light of the uncertainty of prevailing on the merits, the effectiveness of the proposed distribution of relief, and the attorneys' fees sought. (Fed. R. Civ. P. 23(e)(2)(C)). .... 15
4. Appointment of the Settlement Administrator.... 19
5. Appointment of Plaintiff as Class Representative. .... 19
6. Appointment of Class Counsel. .... 20

V. SCHEDULING AND FINAL APPROVAL HEARING ........................................ 20
VI. CONCLUSION ........................................................................................................ 21

**TABLE OF AUTHORITIES**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ........ 8

*Ayers v. Thompson*,
358 F.3d 356 (5th Cir. 2004) ........ 17

*Bass v. Imperial Fire*,
2025 U.S. Dist. LEXIS 158889 (W.D. La. Aug. 15, 2025) ........ 6

*Billitteri v. Sec. Am., Inc.*,
2011 U.S. Dist. LEXIS 92713 (N.D. Tex. Aug. 4, 2011) ........ 19

*Bokma v. Performance Food Grp., Inc.*,
*783 F. Supp. 3d 882 (E.D. Va. 2025)* ........ 9, 11

*Cisneros v. EP Wrap-It Insulation, LLC*,
2022 U.S. Dist. LEXIS 112804 (D.N.M. June 27, 2022) ........ 16

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ........ 7, 13, 17

*DeHoyos v. Allstate Corp.*,
240 F.R.D. 269 (W.D. Tex. 2007) ........ 7

*Erica P. John Fund, Inc. v. Halliburton Co.*,
2018 U.S. Dist. LEXIS 69143 (N.D. Tex. Apr. 25, 2018) ........ 16

*Feder v. Elec. Data. Sys. Corp.*,
429 F.3d 125 (5th Cir. 2005) ........ 11, 13

*Garza v. Sporting Goods Properties, Inc.*,
1996 U.S. Dist. LEXIS 2009 (W.D. Tex. Feb. 6, 1996) ........ 7

*Harrell v. WebTPA Emp'r Servs., LLC*,
2025 U.S. Dist. LEXIS 164950 (N.D. Tex. June 5, 2025) ........ 6

*Hatheway v. International Motors*,
1:25-cv-7989, Dkt. 54 (Final Approval Order) (N.D. Ill.) ........ 12

*In re Pool Prods. Distrib. Market Antitrust Litig.*

, 310 F.R.D. 300 (E.D. La. 2015) ........................................................................................ 7

*Jenkins v. Trustmark Nat. Bank*,
300 F.R.D. 291 (S.D. Miss. Mar. 25, 2014) ...................................................................... 16

*Karvaly v. eBay, Inc.*,
245 F.R.D. 71 (E.D.N.Y. 2007) ......................................................................................... 7

*Kincade v. Gen. Tire & Rubber Co.*,
635 F.2d 501 (5th Cir. 1981) .............................................................................................. 7

*Kostka v. Dickey's Barbecue Rests., Inc.,*
2022 U.S. Dist. LEXIS 188186 (N.D. Tex. Oct. 14, 2022) ............................................ 8, 12

*Kostka v. Dickey's Barbecue Restaurants, Inc.,*
*2022 U.S. Dist. LEXIS 188186 (2022)* ............................................................................ 10

*McNamara v. Bre-X Minerals Ltd.*,
214 F.R.D. 424 (E.D. Tex. 2002) ....................................................................................... 6

*Montgomery v. Continental Intermodal Group-Trucking LLC*,
2021 U.S. Dist. LEXIS 68946 (D.N.M. Apr. 9, 2021) ...................................................... 15

*Mullane v. Cent. Hanover Bank & Trust Co.,*
339 U.S. 306 (1950) ......................................................................................................... 18

*Mullen v. Treasure Chest Casino, L.L.C.,*
*186 F.3d 620 (1999)* ........................................................................................................ 10

*Mullen v. Treasure Chest Casino, LLC*,
186 F.3d 620 (5th Cir. 1999) .............................................................................................. 9

*Ortiz v. Fibreboard Corp.,*
527 U.S. 815 (1999). ........................................................................................................ 11

*Parker v. Anderson*,
667 F.2d 1204 (5th Cir. 1982) ............................................................................................ 7

*Reed v. General Motors Corp.*,
703 F.2d 170 (5th Cir. 1983) ............................................................................................ 13

*Schwartz v. TXU Corp.,*
2005 U.S. Dist. LEXIS 27077 (N.D. Tex. Nov. 8, 2005) ................................................. 13

*Stott v. Capital Fin. Servs.*,
277 F.R.D. 316 (N.D. Tex. 2011) ..................................................................................... 19

*Vaughn v. Am., Honda Motor Co.*,
627 F. Supp. 2d 738 (E.D. Tex. 2007) ........ 14

*Wal-Mart Stores v. Dukes,*
564 U.S. 338 (2011) ........ 9

**STATUTES**

28 U.S.C. § 1404(a) ........ 2
28 U.S.C. § 1715 ........ 20
29 U.S.C. § 1182(b)(2)(B) ........ 2, 10
42 U.S.C. § 300gg-4(j)(3)(D) ........ 2, 10
ERISA § 1182 ........ 2

**OTHER AUTHORITIES**

*Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.22 (3d ed. 1992)* ........ 6, 8
*James S. McLaughlin Jr., McLaughlin on Class Actions § 6:7 (15th ed. 2018)* ........ 13
*See Manual for Complex Litigation*, § 30.44 (4th ed. 2024) ........ 7, 18

**RULES**

Fed. R. Civ. P. 23(a) ........ 8
Fed. R. Civ. P. 23(a)(1) ........ 9
Fed. R. Civ. P. 23(a)(2) ........ 9
Fed. R. Civ. P. 23(a)(3) ........ 10
Fed. R. Civ. P. 23(b)(1) ........ 8, 11
Fed. R. Civ. P. 23(e) ........ 18
Fed. R. Civ. P. 23(e)(2) ........ 12
Fed. R. Civ. P. 23(e)(2)(A ........ 13
Fed. R. Civ. P. 23(e)(2)(B ........ 14
Fed. R. Civ. P. 23(e)(2)(D ........ 16
Rule 23 ........ 13, 18, 19
Rule 23(a) ........ 8
Rule 23(b)(1) ........ passim
Rule 23(b)(1) (A) ........ 11
Rule 23(b)(1) (B) ........ 12
Rule 23(e) ........ 6, 13
Rule 23(e)(2) ........ 7, 12, 17
Rule 23(e)(3) ........ 12
Rules 12(b)(1) ........ 1, 2
Rule12(b)(6) ........ 1, 2

Plaintiff Barbara A. Baker, by and through undersigned counsel, submits this Memorandum of Law in Support of her Unopposed Motion for Preliminary Approval of Class Action Settlement.

## I. INTRODUCTION

Plaintiff seeks approval of a proposed "common fund" class action settlement (the "Settlement" or "SA"). Plaintiff alleges that Defendant violated the Employee Retirement Income Security Act of 1974 ("ERISA")") by imposing a discriminatory tobacco surcharge on Plan participants without offering a reasonable alternative standard as required by ERISA and its implementing regulations. After Defendant moved to dismiss under Rules 12(b)(1) and 12(b)(6), the Court denied Defendant's Motion to Dismiss in its entirety. The Parties thereafter reached an agreement in principle to resolve this case on a class-wide basis after engaging in a full-day mediation and conducting arm's-length negotiations.

If approved, the Settlement will establish a Gross Settlement Amount of $2,313,480.87. After deducting Attorneys' Fees and Costs, Case Contribution Awards, Taxes, Administrative Expenses, and a contingency reserve, the Net Settlement Amount will be distributed to Settlement Class Members pro rata based on each member's Balance under the Plan of Allocation. SA §§ I.23, I.26; Ex. B § II.C. The Settlement avoids protracted litigation and is within the range of reasonableness. Plaintiff respectfully requests that this Court: (i) preliminarily approve the Settlement; (ii) appoint Plaintiff as Class Representative; (iii) appoint Siri & Glimstad LLP as Class Counsel; (iv) provisionally certify the Settlement Class under Rule 23(b)(1); (v) approve the proposed Notice Program and Plan of Allocation; (vi) schedule a Final Approval Hearing; and (vii) set deadlines for objections.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On September 26, 2024, Plaintiff filed the Complaint in the United States District Court for the Western District of Pennsylvania alleging that Defendant unlawfully imposed discriminatory tobacco surcharges on employees who use tobacco products without complying with ERISA's regulatory requirements. See ECF No. 1. Plaintiff alleged that Defendant failed to offer, and provide notice of, a reasonable alternative standard that would allow all participants to obtain the "full reward," including refunds for surcharges paid, as required by 29 U.S.C. § 1182(b)(2)(B) and 42 U.S.C. § 300gg-4(j)(3)(D).

On May 21, 2025, the Western District of Pennsylvania granted Defendant's Motion to Transfer Venue under 28 U.S.C. § 1404(a), enforcing the Plan's forum selection clause, and transferred the case to the Northern District of Texas. See ECF Nos. 28, 29. On July 16, 2025, Defendant filed a Motion to Dismiss under Rules 12(b)(1) and 12(b)(6). See ECF No. 44. Plaintiff filed a Response opposing the Motion. See ECF No. 50. On February 19, 2026, the Court denied Defendant's Motion to Dismiss in its entirety, finding that Baker plausibly pled standing based on her monetary injury from paycheck deductions, that tobacco use is a "health status-related factor" under ERISA § 1182, that Baker plausibly pled the Wellness Program failed to provide the "full reward," that Baker plausibly pled failure to disclose the reasonable alternative standard, and that Baker plausibly pled breach of fiduciary duty. See ECF No. 70.

On March 26, 2026, the Court entered a Scheduling Order setting a bench trial on the Court's two-week docket beginning July 19, 2027, with fact discovery due January 18, 2027, and expert discovery due February 22, 2027. See ECF No. 81. Defendant filed its Answer on April 20, 2026. See ECF No. 82. On May 6, 2026, the Parties filed a Joint Motion to Temporarily Stay the Proceedings for Sixty Days to allow settlement discussions. See ECF No. 83. The Court granted

the stay and entered an Amended Scheduling Order. See ECF No. 84. On July 6, 2026, the Parties filed a Joint Status Report, reporting that they had selected Jed D. Melnick, Esq. of JAMS as mediator and scheduled mediation for August 18, 2026. See ECF No. 87. The Parties engaged in a full-day mediation before Mr. Melnick on August 18, 2026, and reached a settlement in principle. On August 24, 2026, the Parties filed a Joint Status Report reporting the settlement. See ECF No. 90. On August 25, 2026, the Court vacated all pending deadlines, including the trial date, and ordered Plaintiff to file a motion for preliminary approval no later than October 5, 2026. See ECF No. 91. The Settlement Agreement requires Class Counsel to file this Motion no later than October 5, 2026. SA § II.2.

## III. THE SETTLEMENT NEGOTIATIONS AND AGREEMENT

The proposed Settlement is the product of informed, arm's-length negotiations. After the Court ruled on Defendant's Motion to Dismiss, the parties engaged in settlement discussions to evaluate claims, defenses, and potential class-wide relief. *See* Faircloth Decl., ¶ 7. Only after counsel developed a sufficient understanding of the factual and legal issues were they able to engage in informed settlement discussions. *Id.*

Class Counsel investigated Defendant's tobacco surcharge program and governing Plan materials to evaluate the strengths and weaknesses of the class-wide damages. Faircloth Decl., ¶ 6. Following the Court's ruling, the Parties engaged in arm's-length settlement negotiations, including a full-day mediation before Jed D. Melnick, Esq. of JAMS on August 18, 2026, and reached a settlement in principle, which they reduced to a formal written Settlement Agreement.

Under the Settlement Agreement, Defendant and/or its insurance carrier will pay a Gross Settlement Amount of $2,313,480.87. SA § I.23. The Settlement requires Defendant to retain an Independent Fiduciary to review and approve the Settlement under Prohibited Transaction Class

Exemption 2003-39; Independent Fiduciary Fees will be paid from the Gross Settlement Amount. SA §§ I.24-I.25, II.6. Subject to Court approval and deductions for Attorneys' Fees and Costs, Case Contribution Awards, Taxes, Administrative Expenses, and a contingency reserve, the Net Settlement Amount will be distributed pro rata tied to each Class Member's Balance. SA § I.26; Ex. B §§ II.B-C. The Settlement provides immediate monetary relief while avoiding the cost, risk, and delay of continued litigation. Faircloth Decl., ¶¶ 26-30. The Settlement reflects a considered resolution reached by experienced counsel after sufficient investigation and exchange of information. *Id.*, ¶ 39.

**A. The Settlement Class.**

The Settlement contemplates certification of a non-opt-out settlement class under Rule 23(b)(1) defined as:

> All individuals who (a) were a Plan participant or beneficiary at any point from September 26, 2018, through the date of entry of the Preliminary Approval Order; (b) paid a tobacco or nicotine surcharge in connection with their participation in the Plan from September 26, 2018, through the date of entry of the Preliminary Approval Order; and (c) were not fully reimbursed the tobacco or nicotine surcharge payments made from September 26, 2018, through the date of entry of the Preliminary Approval Order.

SA § I.8. The Class Period runs from September 26, 2018, through entry of the Preliminary Approval Order. SA § I.12. The Settlement Class is ascertainable from Defendant's records. The Complaint alleges the Plan had over 10,500 active participants as of January 1, 2023, and that the proposed class contains thousands of affected participants. Complaint ¶¶ 14-15, 51.

**B. Calculation of Class Member Payments and Distribution Timing.**

Under the Plan of Allocation, the Settlement Administrator will calculate each Class Member's "Balance" as net tobacco surcharges paid from September 26, 2018, through entry of the Preliminary Approval Order, less any refunds. *See* Ex. B §§ II.B-C. Each Class Member will

receive a share of the Net Settlement Amount proportionate to their Balance. *Id.* Class Members will be paid by check. *See* Ex. B § II.D. Checks remain valid for 200 days and if not distributed to a Class Member, then after payment or reasonable reservation for all remaining Administrative Expenses and Taxes, will be distributed *cy pres* to a Court-approved recipient. *See* SA § III.7; Ex. B §§ II.D, G. No action is required for eligible Class Members to receive payment.

**C. Release and Covenant Not to Sue**

The Settlement includes a release tied to the claims and factual predicate of this Action. As of the Settlement Effective Date, the Plan (subject to Independent Fiduciary approval), Plaintiff, and Class Members will release the Released Parties from the Released Claims, including claims asserted or that could have been asserted in the Action. *See* SA §§ I.35, V.1. The release includes known and unknown claims and waives protections comparable to California Civil Code section 1542. *See* SA §§ V.3-V.5. Plaintiff, Class Members, and the Plan also covenant not to sue based on Released Claims except to enforce the Settlement Agreement. *See* SA § V.2. The release becomes binding on the Settlement Effective Date. *See* SA §§ I.40, III.1.

**D. Anticipated Notice Program**

Defendant shall provide the Settlement Administrator with the Class Member List within twenty-one (21) days after entry of the Preliminary Approval Order. The Settlement Administrator shall send the Notice by U.S. Mail within the time set by the Preliminary Approval Order and use commercially reasonable efforts to locate and resend returned notices. *See* SA §§ II.3(a), II.4, II.4(a). The Notice will be available on the Settlement Website along with a toll-free number for inquiries. Because this is a non-opt-out settlement under Rule 23(b)(1), Settlement Class Members may object in writing per the Notice. *See* SA § II.1; Ex. A.

**E. Attorneys' Fees and Costs and Case Contribution Award**

Class Counsel will apply for Attorneys' Fees and Costs and a Case Contribution Award.

SA § II.8. Class Counsel may seek attorneys' fees not to exceed 33.33% of the Gross Settlement Amount, plus reasonable litigation costs. SA § II.8(a). Plaintiff may seek a Case Contribution Award not to exceed $7,500. SA § II.8(c). These requests will be made at least forty-five (45) days before the Final Approval Hearing, affording Settlement Class Members time to review and object. SA § II.8(f).

## IV. ARGUMENT

### A. Legal Authority

Federal Rule of Civil Procedure 23(e) requires court approval of any class settlement following notice to the class. *See* Fed. R. Civ. P. 23(e). The preliminary approval stage provides a forum for initial evaluation of a settlement and, where no class has been previously certified, a determination as to whether a proposed settlement class should be certified. *See* 2 Newberg & Conte, *Newberg on Class Actions*, §§ 11.22, 11.27 (3d ed. 1992). "First, the Court makes a preliminary fairness evaluation of the proposed terms of settlement submitted by counsel. Second, if the Court determines that the settlement is fair, the Court directs that notice pursuant to Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement." *Harrell v. WebTPA Emp'r Servs., LLC*, No. 3:24-cv-1158-L-BN, 2025 U.S. Dist. LEXIS 164950, at *11 (N.D. Tex. June 5, 2025) (quoting *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426-27 (E.D. Tex. 2002)). At this stage, the settling parties bear the burden of demonstrating that the settlement is fair, reasonable, and adequate. *See Bass v. Imperial Fire*, 2025 U.S. Dist. LEXIS 158889, at *10 (W.D. La. Aug. 15, 2025) (determining settlement agreement was "in all respects fair, reasonable, adequate and in the best interest of the Class Members.")

The standards at the preliminary approval stage are not as stringent as those applied to a motion for final approval. *See In re Pool Prods. Distrib. Market Antitrust Litig.,* 310 F.R.D. 300,

314 (E.D. La. 2015 (citing *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007)). "If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *In re Pool Prods. Distrib. Market Antitrust Litig.,* 310 F.R.D. at 314-315 (collecting cases).

Plaintiff seeks preliminary approval—an initial evaluation of the fairness of the proposed Settlement. *See Manual for Complex Litigation*, § 30.44 (4th ed.). Judicial and public policy favor settlement. *See Odonnell v. Harris County*, No. 16-cv-1414, 2019 U.S. Dist. LEXIS 151159, at *24 (S.D. Tex. Sep. 5, 2019); *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982); *see also Kincade v. Gen. Tire & Rubber Co*., 635 F.2d 501, 507 (5th Cir. 1981) ("Particularly in class action suits, there is an overriding public interest in favor of settlement.") (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).

Settlements are not required to "achieve some hypothetical standard constructed by imagining every benefit that might someday be obtained in contested litigation"—rather, compromise is the essence of settlement, and a court may rely on the judgment of experienced counsel for the parties. *DeHoyos v. Allstate Corp.,* 240 F.R.D. 269, 286 (W.D. Tex. 2007) (quoting *Garza v. Sporting Goods Properties, Inc*., No. CIV. A. SA-93-CA-108, 1996 U.S. Dist. LEXIS 2009 (W.D. Tex. Feb. 6, 1996). In granting preliminary approval, the Court determines it will "likely" be able to grant final approval of the Settlement under Rule 23(e)(2) and certify the class for purposes of settlement.

Because the proposed Settlement Agreement falls within the range of possible approval, this Court should grant Plaintiffs' Motion and allow notice to be provided to the Settlement Class.

*See* 2 Newberg & Conte, *Newberg on Class Actions*, § 11.25 (3d ed. 1992).

### A. The Court Should Certify the Proposed Class for Settlement Purposes.

Plaintiff seeks certification of a Settlement Class consisting of all individuals who: (a) were a Plan participant or beneficiary at any point from September 26, 2018, through the date of entry of the Preliminary Approval Order; (b) paid a tobacco or nicotine surcharge in connection with their participation in the Plan from September 26, 2018, through the entry of the Preliminary Approval Order; and (c) were not fully reimbursed the tobacco or nicotine surcharge payments made from September 26, 2018, through the date of entry of the Preliminary Approval Order. SA § I.8.

Under Rule 23(a), a class action may be maintained where movants demonstrate (1) numerosity; (2) common questions of law or fact; (3) typicality; and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a); *Kostka v. Dickey's Barbecue Rests., Inc.,* No. 3:20-cv-03424-K, 2022 U.S. Dist. LEXIS 188186, at *19 (N.D. Tex. Oct. 14, 2022) (citing *Ibe v. Jones,* 836 F.3d 516, 528 (5th Cir. 2016)). Additionally, under Rule 23(b)(1), a class may be maintained where "the prosecution of law or fact common separate actions by individual class members would create a risk of (A) inconsistent or varying adjudications that would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications that, as a practical matter, would be dispositive of the interests of nonparty class members or substantially impair their ability to protect their interests." Fed. R. Civ. P. 23(b)(1).

Because the court is evaluating certification only in the settlement context, the analysis differs from contested litigation. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Case management issues need not be confronted since no trial is anticipated. *See id.* However, issues "designed to protect absentees by blocking unwarranted or overbroad class definitions"

require heightened scrutiny "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id*.

Despite the rigorous analysis required at the preliminary certification stage, class actions are regularly certified for settlement. ERISA class actions involving wellness program violations have been certified for settlement. *See, e.g., Bokma v. Performance Food Group*, No. 24-cv-686, Dkt. 57 (E.D. Va.) (appointing Siri & Glimstad LLP as Class Counsel in ERISA wellness program case). This case is no different. Each Rule 23(a) requirement is satisfied.

**1. *The Settlement Class is so Numerous that Joinder is Impracticable.***

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). The Fifth Circuit has found that a class of 100 to 150 members "is within the range that generally satisfie[s] the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (citation omitted). Here, the Plan had over 10,500 active participants as of January 1, 2023, and the proposed Settlement Class contains thousands of participants who were affected by Defendant's tobacco surcharge program and whose identities can be determined from Defendant's records. The Settlement Class clearly surpasses the threshold required to establish numerosity.

**2. *Questions of Law and Fact are Common to the Settlement Class.***

Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The threshold is not high: commonality requires that questions linking class members be substantially related to the litigation's resolution and capable of generating common answers "apt to drive the resolution of the litigation." *See Wal-Mart Stores v. Dukes,* 564 U.S. 338, 347 (2011). "The test for commonality is not demanding and is met 'where there is at least one issue, the

resolution of which will affect all or a significant number of the putative class members.'" *Kostka*, 2022 U.S. Dist. LEXIS 188186, at *21 (quoting *Mullen*, 186 F.3d at 625).

The commonality requirement is satisfied. Whether Defendant failed to offer a reasonable alternative standard as required by ERISA is a question common across the entire class. Defendant's tobacco wellness program practices are uniform across the Settlement Class.

Other specific common issues include (but are not limited to):

- Whether Defendant failed to comply with the reasonable alternative standard requirements under 29 U.S.C. § 1182(b)(2)(B) and 42 U.S.C. § 300gg-4(j)(3)(D); and
- Whether Defendant's tobacco wellness program complied with ERISA's nondiscrimination provisions and required notice obligations.

These common questions are central to the causes of action, will generate common answers, and can be addressed class-wide. Thus, Plaintiff meets the commonality requirement.

**3. *Plaintiff's Claims and Defenses are Typical of the Settlement Class.***

Typicality is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole." Fed. R. Civ. P. 23(a)(3). "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *See Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002). Here, Plaintiff's and Settlement Class Members' claims stem from the same alleged conduct—Defendant's imposition of allegedly discriminatory tobacco surcharges allegedly without a compliant reasonable alternative standard—and the same tobacco wellness program policies. Thus, typicality is satisfied.

**4. *Plaintiff and Counsel Will Provide Fair and Adequate Representation for the Settlement Class.***

To satisfy adequacy, Plaintiff must establish: (1) no antagonism or conflict between the Class Representative and class members; and (2) counsel and the Class Representative are

competent, willing, and able to protect absent class members' interests. *See Feder v. Elec. Data. Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005). Plaintiff's interests are aligned with the Settlement Class—she and the class seek relief for injuries from Defendant's tobacco wellness program. All contend they paid discriminatory surcharges in connection with the Plan. Under the Settlement, Plaintiff and Class Members are eligible to receive their share of the Net Settlement Amount proportionate to their net tobacco surcharge payments.

Proposed Class Counsel have extensive experience in national class actions, including ERISA wellness program cases. *See* Faircloth Decl., ¶ 49. They have negotiated an early stage settlement providing immediate, significant relief. Thus, Rule 23(a) is satisfied.

**5. *Certification Under Rule 23(b)(1) Is Appropriate Because Separate Actions Would Create a Risk of Inconsistent Adjudications or Impair Absent Members' Interests.***

Under Rule 23(b)(1), a class may be certified where prosecuting separate actions would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for the defendant, or adjudications as to individual members that would, as a practical matter, be dispositive of the interests of other members or substantially impair their ability to protect their interests. Fed. R. Civ. P. 23(b)(1); *see Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 834 (1999). Both prongs are satisfied here.

*First*, under Rule 23(b)(1) (A), individual adjudications of whether Defendant failed to provide a reasonable alternative standard as required by ERISA would risk inconsistent results and impose incompatible obligations on Defendant regarding its tobacco wellness program. Because Defendant administered a single, uniform program, the legality of that program cannot properly be adjudicated piecemeal. *See e.g., Bokma*, No. 24-cv-686, Dkt. 57; *Hatheway v. International*

*Motors*, 1:25-cv-7989, Dkt. 54 (Final Approval Order) (N.D. Ill.) (certifying ERISA wellness program class action for settlement).

*Second*, under Rule 23(b)(1) (B), individual adjudications would, as a practical matter, be dispositive of the interests of absent class members. Because the claims arise from a single Plan governed by uniform ERISA provisions, a ruling in one participant's case on the legality of Defendant's tobacco surcharge program would effectively determine the rights of all participants. ERISA class actions involving plan-wide challenges are routinely certified under Rule 23(b)(1). *See id.* Moreover, resolving thousands of claims in one action promotes judicial efficiency and avoids the risk of inconsistent outcomes across individually litigated ERISA cases arising from the *same* tobacco wellness program. Rule 23(b)(1) is met, and the class should be certified for settlement

**B. The Settlement Terms Are Fair, Reasonable, and Adequate.**

At the preliminary approval stage, the Court must determine it will "likely" be able to grant final approval under Rule 23(e) (2). *See* Fed. R. Civ. P. 23(e)(2). The court must consider whether the settlement is "fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." *See Kostka,* 2022 U.S. Dist. LEXIS 188186, at *30. In determining whether relief is adequate, courts consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id.*

Before the 2018 revisions to Rule 23(e), the Fifth Circuit had developed its own factors, known as the *Reed* factors, for determining whether a settlement was fair, adequate, and reasonable. *See Reed v. General Motors Corp*., 703 F.2d 170, 172 (5th Cir. 1983). Because the Rule 23 and *Reed* factors overlap, Fifth Circuit courts often combine them in analyzing class settlements.

Because public interest strongly favors settlement of class actions, there is a strong presumption in favor of approval. *See Schwartz v. TXU Corp.,* No. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077, at *58 (N.D. Tex. Nov. 8, 2005) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). A settlement "will be preliminarily approved unless there are obvious defects in the notice or other technical flaws, or the settlement is outside the range of reasonableness or appears to be the product of collusion, rather than arms-length negotiation." 2 *McLaughlin on Class Actions,* § 6:7 (15th ed. 2018). Because the Settlement is fair, reasonable, and adequate under Rule 23 and the *Reed* factors, this Court should grant preliminary approval and direct notice to issue.

#### 1. *Class Representative and Class Counsel Have Adequately Represented the Class. (Fed. R. Civ. P. 23(e)(2)(A)).*

To satisfy adequacy, Plaintiff must establish: (1) no antagonism or conflict between the Class Representative and class members; and (2) counsel and the Class Representative are competent to protect absent class members. *See Feder*, 429 F.3d at 130. Plaintiff paid surcharges in connection with the *same* tobacco wellness program as all Settlement Class Members, and thus has the same interests. The Class Representative has ably represented the Settlement Class, maintaining contact with counsel, reviewing pleadings, assisting in the investigation, reviewing Settlement documents, and answering counsel's questions.

Class Counsel vigorously pursued Settlement Class interests, securing immediate relief while avoiding the risks, costs, and delay of continued litigation, relying on their experience in ERISA wellness program litigation, detailed investigation, and information exchanged during negotiations. Faircloth Decl., ¶¶ 6-7, 33.

#### 2. ***The Settlement is the Product of Good-Faith Arm's Length Negotiations and is Absent of Any Collusion (Fed. R. Civ. P. 23(e)(2)(B)).***

On March 26, 2026, the Court entered a Scheduling Order setting a bench trial on the Court's two-week docket beginning July 19, 2027, with fact discovery due January 18, 2027, and expert discovery due February 22, 2027. See ECF No. 81. Defendant filed its Answer on April 20, 2026. *See* ECF No. 82. On May 6, 2026, the Parties filed a Joint Motion to Temporarily Stay the Proceedings for Sixty Days to allow settlement discussions. *See* ECF No. 83. The Court Amended Scheduling Order and extended certain deadlines in lieu of staying the case. *See* ECF No. 84. On July 6, 2026, the Parties filed a Joint Status Report, reporting that they had selected Jed D. Melnick, Esq. of JAMS as mediator and scheduled mediation for August 18, 2026. *See* ECF No. 87. The Parties engaged in a full-day mediation before Mr. Melnick on August 18, 2026, and reached a settlement in principle. On August 24, 2026, the Parties filed a Joint Status Report reporting the settlement. *See* ECF No. 90. On August 25, 2026, the Court vacated all pending deadlines, including the trial date, and ordered Plaintiff to file a motion for preliminary approval no later than October 5, 2026. *See* ECF No. 91. The Settlement Agreement requires Class Counsel to file this Motion no later than October 5, 2026. SA § II.2.

Moreover, the proposed Settlement does not favor any Settlement Class Member or group of Settlement Class Members, which also weighs against any evidence of fraud or collusion and in favor of approval. *See Vaughn v. Am., Honda Motor Co*., 627 F. Supp. 2d 738, 748 (E.D. Tex. 2007).

### 3. *The Settlement Agreement provides substantial relief to the Settlement Class, in light of the uncertainty of prevailing on the merits, the effectiveness of the proposed distribution of relief, and the attorneys' fees sought. (Fed. R. Civ. P. 23(e)(2)(C)).*

Most importantly, the Settlement guarantees real, meaningful relief—a Gross Settlement Amount of $2,313,480.87. SA § I.23. The Net Settlement Amount, after deductions for Attorneys' Fees and Costs, Case Contribution Awards, Taxes, Administrative Expenses, and a contingency reserve, will be distributed *pro rata* based on each member's Balance. SA §§ I.23, I.26; Ex. B §§ II.B-C.

The Settlement provides substantial value. Distribution is automatic—no claim forms are required; the Settlement Administrator will calculate each member's share using Defendant's data and issue payments by check. Faircloth Decl., ¶ 22. The Settlement avoids years of litigation and provides immediate relief. Faircloth Decl., ¶¶ 26-30.

#### *i. The uncertainty of prevailing on the merits.*

While Plaintiff believes she has solid claims, success is not guaranteed. Defendant denies Plaintiff's claims, believes the Plan was managed reasonably and prudently, and contends it acted in compliance with the law. SA § IV; Faircloth Decl., ¶ 29. Each litigation stage—class certification, trial, appeal—presents substantial risk. Proving Defendant's ERISA violations and resulting damages class-wide would be uncertain. Through settlement, Class Members gain significant benefits without risking zero recovery. Faircloth Decl., ¶¶ 26-31.

#### *ii. The effectiveness of the proposed distribution of relief, including the method of processing class-member claims.*

"Under this factor the court, 'scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims' and 'should be alert to whether the claims process is unduly demanding.'" *Montgomery v. Cont'l Intermodal Grp.-Trucking LLC*, No. 19-940 GJF, 2021 U.S. Dist. LEXIS 68946, at *14 (D.N.M. Apr. 9, 2021). Here, the method is "simple, straightforward,

and nonburdensome." *In re Samsung Top-Load Washing Mach. Mktg., Sales Practices & Prods. Liab. Litig.*, No. 17-cv-2792, 2020 U.S. Dist. LEXIS 90752, at *58 (W.D. Okla. May 22, 2020). No claim forms are required; the Settlement Administrator will calculate each member's share and issue payments automatically by check. Faircloth Decl., ¶ 22. "[T]he proposed method of distribution allows for rapid distribution of benefits to Participating Class Members and is not unduly demanding." *Cisneros v. Ep Wrap-It Insulation, LLC*, No. 19-CV-500, 2022 U.S. Dist. LEXIS 112804, at *16 (D.N.M. June 27, 2022).

All Settlement Class Members will receive individualized notices and may object. *Caddick v. Tasty Baking Co.*, No. 2:19-cv-02106, 2021 U.S. Dist. LEXIS 70016, at *18 (E.D. Pa. Apr. 12, 2021). The Settlement Administrator shall pay valid claims by check no later than twenty (20) business days after the later of (a) the Settlement Effective Date or (b) completion of the final allocation calculations and resolution of any material data issues.. SA § III.2. Because this is a non-opt-out settlement under Rule 23(b)(1), Class Members may object in writing per the Notice. SA § II.1.

***iii. The attorneys' fees sought.***

Class Counsel intends to seek attorneys' fees not to exceed 33.33% of the Gross Settlement Amount, plus reasonable litigation costs and expenses. SA § II.8(a); Faircloth Decl., ¶ 23. One-third fee requests are regularly granted in the Fifth Circuit. *See, e.g., Erica P. John Fund, Inc. v. Halliburton Co.,* No. 3:02-cv-1152-M, 2018 U.S. Dist. LEXIS 69143, at *42 (N.D. Tex. Apr. 25, 2018) (approving 33.3% fee); *In re Combustion*, 968 F. Supp. 1116, 1142 (W.D. La. June 4, 1997) (36% of $127 million settlement); *Jenkins v. Trustmark Nat. Bank*, 300 F.R.D. 291, 307 (S.D. Miss. Mar. 25, 2014) (33.33% of $4 million settlement).

***iv. The proposed Settlement treats Settlement Class Members equitably. (Fed. R. Civ. P. 23(e)(2)(D)).***

The Settlement does not improperly discriminate among Settlement Class Members. All will receive their share of the Net Settlement Amount proportionate to their net tobacco surcharge payments. SA § I.26; Ex. B §§ II.B-C. While Plaintiff seeks a Case Contribution Award not exceeding $7,500, this is justified by the time, effort, and risks she assumed. SA § II.8(c); Faircloth Decl., ¶ 23. Thus, the Settlement is fair, reasonable, and adequate under Rule 23(e)(2).

#### *v. The "Reed" Factors Considered by Fifth Circuit Courts also Weigh in Favor of Preliminary Approval.*

The *Reed* factors also weigh in favor of preliminary approval.

*First,* there is no evidence of fraud or collusion. The Settlement was reached after arm's length, good faith negotiations.

*Second,* continued litigation is likely to be complex, lengthy, and expensive. Should litigation continue, Plaintiff would need to counter summary judgment, gain and maintain class certification, and potentially proceed through trial and appeals. Faircloth Decl., ¶¶ 26-31.

*Third*, the Settlement was reached after extensive investigation and informal information exchange. Class Counsel investigated Defendant's tobacco surcharge program and Plan materials. Faircloth Decl., ¶ 6. Where Parties possess ample information to evaluate the merits, a lack of formal discovery will not prevent preliminary approval. *See Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004); *Cotton,* 559 F.2d at 1331.

*Fourth,* continued litigation presents substantial risks. Defendant denies Plaintiff's claims, believes the Plan was managed reasonably, and contends it acted in compliance with the law. SA § IV. Plaintiff's path to recovery through litigation is full of risks—class certification, proving liability, maintaining certification through trial, and potentially appeal—potentially resulting in zero recovery. Faircloth Decl., ¶¶ 26-31.

*Fifth,* the Settlement provides a Gross Settlement Amount of $2,313,480.87, with the Net Settlement Amount distributed pro rata based on each member's net tobacco surcharge payments. SA §§ I.23, I.26; Ex. B.

*Sixth,* while this factor is best examined after notice, Plaintiff has no reason to believe there will be any antagonism to the Settlement. Class Counsel maintain that the Settlement provides significant relief, and Plaintiff believes it is fair, reasonable, adequate, and worthy of preliminary approval. Faircloth Decl., ¶¶ 33, 41.

Thus, the additional *Reed* factors also weigh in favor of preliminary approval.

***vi. The Proposed Notice Program Provides Adequate Notice.***

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed Settlement. Fed. R. Civ. P. 23(e). For classes certified under Rule 23(b)(1), the court must direct appropriate notice to the class and the best practicable notice remains the constitutional standard under due process. *See Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 318 (1950).

The Notice meets due process requirements, Rule 23, and the *Manual for Complex Litigation*. *See* SA Exs. A, C. The Settlement provides for direct, individual notice by U.S. Mail to each Settlement Class Member. SA § II.4. Defendant shall provide the Class Member List within twenty-one (21) days after entry of the Preliminary Approval Order. SA § II.3(a). The Settlement Administrator shall use commercially reasonable efforts to locate any Class Member whose Notice is returned and re-send it. SA § II.4(a); Faircloth Decl., ¶¶ 50-51.

Important documents, including the Notice and Settlement Agreement, will be available on the Settlement Website, along with a toll-free number for inquiries. SA § II.4; Faircloth Decl., ¶¶ 50-51.

The Notice is clear and consistent with the Federal Judicial Center's model plain notice language. It defines the Settlement Class; describes options and deadlines; describes the Settlement's essential terms; discloses the requested Case Contribution Award and attorneys' fees; explains objection procedures; provides distribution information; and describes the Final Approval Hearing. *See* SA Ex. A; Faircloth Decl., ¶ 52.

Direct mail notice is the gold standard. *See Stott v. Capital Fin. Servs.*, 277 F.R.D. 316, 342 (N.D. Tex. 2011); *Billitteri v. Sec. Am., Inc.,* No. 3:09-cv-01568-F, 2011 U.S. Dist. LEXIS 92713, at *41 (N.D. Tex. Aug. 4, 2011) (approving direct mail notice). The Notice is tappropriate under the circumstances in that it apprises Class Members of the action, and gives them opportunity to object. *See* Faircloth Decl., ¶¶ 51-52. The Notice provides due process, complies with Rule 23, and should be approved. *See Id.*

**4. *Appointment of the Settlement Administrator.***

The Parties request that the Court appoint Rust Consulting, Inc., the Settlement Administrator selected by Class Counsel and not objected to by Defendant. The Settlement Administrator will administer the Notice, Plan of Allocation, and distribution for a reasonable cost. Faircloth Decl., ¶ 50.

**5. *Appointment of Plaintiff as Class Representative.***

Plaintiff should be appointed Class Representative. Throughout the litigation, Plaintiff has represented the Settlement Class with no conflict of interest. Faircloth Decl., ¶ 46. Plaintiff paid surcharges in connection with the *same* tobacco wellness program and has the same interests as Class Members. *Id*. Plaintiff has capably represented the Class, assisting with the investigation, reviewing pleadings, maintaining contact with counsel, and answering questions. *Id.*, ¶ 16. Finally, Plaintiff has been informed about the advantages and disadvantages of proceeding as a class action.

#### 6. *Appointment of Class Counsel.*

Plaintiff requests appointment of Oren Faircloth and William H. Payne, IV of Siri & Glimstad LLP as Class Counsel. Proposed Class Counsel has extensive experience prosecuting class actions, particularly ERISA wellness program cases. *See* Faircloth Decl. Class Counsel has adequately represented the Settlement Class, including by briefing a response to Defendant's Motion to Dismiss and engaging in arm's length negotiations to reach an excellent Settlement. Faircloth Decl., ¶¶ 34, 47-49.

## V. SCHEDULING AND FINAL APPROVAL HEARING

The last step is the Final Approval Hearing, when Settlement proponents may offer argument in support of approval and Class Members may be heard. The following sets forth the proposed schedule based on the Settlement Agreement.

| Event | Timing |
|---|---|
| Deadline for Defendant to send CAFA Notice pursuant to 28 U.S.C. § 1715 | 10 calendar days after Class Counsel files the Motion for Preliminary Approval |
| Deadline for Defendant to provide the Class Member List to the Settlement Administrator pursuant to the Settlement Agreement | 21 calendar days after entry of the Preliminary Approval Order |
| Deadline for the Settlement Administrator to mail the Settlement Notice | No later than 60 calendar days before the Final Approval Hearing |
| Deadline to file proof of Settlement Notice mailing | At or before the Final Approval Hearing |
| Deadline for Class Counsel to file motion for Attorneys' Fees and Costs and Case Contribution Award | 45 calendar days prior to the Final Approval Hearing |
| Objection Deadline | 30 calendar days prior to the Final Approval Hearing |
| Deadline for Class Counsel to file motion for final approval of Settlement and approval of Plan of Allocation | 45 calendar days prior to the Final Approval Hearing |
| Deadline for the Parties to respond to timely objections | Prior to the Final Approval Hearing |

| Event | Timing |
|---|---|
| Final Approval Hearing | ______________, 2026 at __: __ _.m. in Courtroom ____<br>[No earlier than 120 calendar days after entry of the Preliminary Approval Order] |

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court enter an order preliminarily approving the Settlement and Plan of Allocation; provisionally certifying the Settlement Class under Rule 23(b)(1); appointing Plaintiff as Class Representative; appointing Siri & Glimstad LLP as Class Counsel; approving the proposed notice and schedule; and scheduling a Final Approval Hearing.

Dated: October 13, 2026

**SIRI & GLIMSTAD LLP**

/s/ *Oren Faircloth*
Oren Faircloth *(pro hac vice)*
William H. Payne, IV (*pro hac vice*)
100 Pearl Street
14th Floor - #16946876
Hartford, CT 06103
Tel: (929) 677-5181 / (212) 532-1091
E: ofaircloth@sirillp.com
E: wpayne@sirillp.com

*Attorneys for Plaintiff*

**KENDALL LAW GROUP, PLLC**

Joe Kendall (Texas Bar No. 11260700)
3811 Turtle Creek Blvd., Suite 825
Dallas, Texas 75219
Tel: (214) 744-3000
jkendall@kendalllawgroup.com

*Local Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on October 13, 2026 a true and correct copy of the foregoing Memorandum in Support of Motion for Preliminary Approval of a Class Action Settlement was filed with the Court by electronic filing protocols and that same will therefore be electronically served upon all attorneys of record registered with the Court's ECF/CM system.

*/s/ Oren Faircloth*
Oren Faircloth