**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| BARBARA A. BAKER, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>7-ELEVEN INC.<br><br>Defendant. | Civil Action No.: 3:25-cv-01609-X |

**DECLARATION OF OREN FAIRCLOTH**
**IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF**
**CLASS ACTION SETTLEMENT**

I, Oren Faircloth, hereby declare:

1. I am an attorney admitted and licensed to practice law in Connecticut. I am licensed to practice before this Court under *pro hac vice* status. I am an attorney at Siri & Glimstad LLP ("Siri"), a plaintiffs' class action law firm that litigates a significant volume of ERISA cases. I serve as counsel of record for Plaintiff in the above-captioned case.

2. I am one of the proposed Class Counsel under the proposed Settlement with 7-Eleven, Inc. ("Defendant") being presented to the Court for Preliminary Approval. I submit this declaration in support of Plaintiff's Motion for Preliminary Approval of the Class Action Settlement. My co-counsel is William H. Payne, IV, and our firm address is 100 Pearl Street, 14th Floor - #16946876, Hartford, CT 06103. I have personal knowledge of the facts set forth herein and could testify competently as to them if called upon to do so.

3. Filed concurrently herewith as Exhibit 1 is a true and correct copy of the Class

Action Settlement Agreement entered into by Plaintiff, on behalf of herself and the proposed Settlement Class, and Defendant. The Parties' proposed Notice is Exhibit A to the Settlement Agreement. The Parties' proposed Plan of Allocation is Exhibit B to the Settlement Agreement. The Parties' proposed Preliminary Approval Order is Exhibit C to the Settlement Agreement. The Parties' proposed Final Approval Order is Exhibit D to the Settlement Agreement.

**I. Background and Procedural History**

4. This Action arises out of Plaintiff's claims that Defendant unlawfully imposed discriminatory tobacco surcharges on employees who use tobacco products without complying with the regulatory requirements under ERISA and its implementing regulations. The Complaint alleges that Defendant's tobacco wellness program required participants to satisfy certain conditions or face tobacco surcharges, and that Defendant failed to offer, and provide notice of, a reasonable alternative standard that would allow all participants to obtain the "full reward," including refunds for surcharges paid, as required by 29 U.S.C. § 1182(b)(2)(B) and 42 U.S.C. § 300gg-4(j)(3)(D). The tobacco surcharges were imposed in connection with the health insurance offered through the 7-Eleven Comprehensive Welfare Benefit Plan (the "Plan"). The Plan had over 10,500 active participants as of January 1, 2023, according to publicly filed documents, and the Complaint alleges that the proposed Class contains thousands of participants who were damaged by Defendant's conduct. Plaintiff seeks recovery of unlawfully charged surcharges and declaratory, injunctive, restitutionary, and other equitable relief for the Plan and the proposed Class.

5. On September 26, 2024, Plaintiff commenced this putative class action by filing the Complaint in the United States District Court for the Western District of Pennsylvania. See ECF No. 1 (the "Complaint"). Plaintiff asserted causes of action under ERISA, including Count I

for unlawful imposition of a discriminatory tobacco surcharge in violation of ERISA § 702, 29 U.S.C. § 1182, Count II for breach of fiduciary duty under ERISA § 404, 29 U.S.C. § 1104, and Count III for prohibited transactions under ERISA § 406, 29 U.S.C. § 1106. Plaintiff alleged that Defendant failed to offer, and provide notice of, a reasonable alternative standard as required by 29 U.S.C. § 1182(b)(2)(B) and 42 U.S.C. § 300gg-4(j)(3)(D). On May 21, 2025, the Western District of Pennsylvania granted Defendant's Motion to Transfer Venue under 28 U.S.C. § 1404(a), enforcing the Plan's forum selection clause, and transferred the case to the Northern District of Texas (ECF Nos. 28, 29). On July 16, 2025, Defendant filed a Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) (ECF No. 44). Plaintiff filed a Response opposing the Motion (ECF No. 50). On February 19, 2026, the Court denied Defendant's Motion to Dismiss in its entirety, finding that Baker plausibly pled standing based on her monetary injury from paycheck deductions, that tobacco use is a "health status-related factor" under ERISA § 1182, that Baker plausibly pled the Wellness Program failed to provide the "full reward," that Baker plausibly pled failure to disclose the reasonable alternative standard, and that Baker plausibly pled breach of fiduciary duty (ECF No. 70). On March 26, 2026, the Court entered a Scheduling Order setting a bench trial on the Court's two-week docket beginning July 19, 2027, with fact discovery due January 18, 2027, and expert discovery due February 22, 2027 (ECF No. 81). Defendant filed its Answer on April 20, 2026 (ECF No. 82). On May 6, 2026, the Parties filed a Joint Motion to Temporarily Stay the Proceedings for Sixty Days to allow settlement discussions (ECF No. 83). The Court entered an Amended Scheduling Order in lieu of staying the case (ECF No. 84). On July 6, 2026, the Parties filed a Joint Status Report, reporting that they had selected Jed D. Melnick, Esq. of JAMS as mediator and scheduled mediation for August 18, 2026 (ECF No. 87). The Parties engaged in a full-day mediation before Mr. Melnick on August

18, 2026, and reached a settlement in principle. On August 24, 2026, the Parties filed a Joint Status Report reporting the settlement (ECF No. 90). On August 25, 2026, the Court vacated all pending deadlines, including the trial date, and ordered Plaintiff to file a motion for preliminary approval no later than October 5, 2026 (ECF No. 91), after which the Parties documented their agreement in the Settlement Agreement.

6. Class Counsel investigated Defendant's tobacco surcharge program and the governing Plan materials to evaluate Plaintiff's claims and the strengths and weaknesses of the class-wide damages.

7. Following the Court's denial of Defendant's Motion to Dismiss, the Parties engaged in arm's-length settlement negotiations, including a full-day mediation before Jed D. Melnick, Esq. of JAMS on August 18, 2026, and exchanged information needed to evaluate the claims, defenses, and potential class-wide relief. On August 18, 2026, the Parties reached a settlement in principle and thereafter entered into the formal Settlement Agreement.

## II. Investigation and Litigation Efforts

8. Class Counsel investigated this Action before initiating the lawsuit against Defendant. Prior to filing the complaint, Plaintiff's counsel investigated and analyzed all publicly available information related to Defendant's tobacco surcharge program and the Plan.

9. Plaintiff's counsel analyzed and evaluated the viability of Plaintiff's claims against Defendant and identified the relevant facts and applicable legal claims.

10. Plaintiff's counsel reviewed and analyzed applicable statutory and regulatory requirements under ERISA, including the wellness program regulations at 29 C.F.R. § 2590.702(f) and the Department of Labor's Final Regulations regarding nondiscriminatory wellness programs.

11. Plaintiff's counsel analyzed the Plan documents, summary plan descriptions, and benefits enrollment materials to assess Defendant's compliance with ERISA's anti-discrimination provisions and notice requirements.

12. Plaintiff's counsel was prepared to litigate this Action to conclusion, including through discovery, class certification, summary judgment, trial, and any appeals.

13. Through this investigation, Plaintiff learned that Defendant may raise defenses regarding the existence and scope of its wellness program obligations. These potential defenses increased the risk of continued litigation.

14. Plaintiff is well informed of the strengths and weaknesses of her claims. Having drafted and reviewed the pleadings, opposed Defendant's Motion to Dismiss, and researched the issues and publicly available facts about Defendant's tobacco surcharge program, Plaintiff and her counsel were able to assess the value of the Settlement Class's claims and the risks of continued litigation and determine that the Settlement is fair, reasonable, adequate, and in the Settlement Class Members' best interests.

15. Our efforts on behalf of the proposed Settlement Class include (as noted in part above):

a. conducting a thorough pre-suit investigation, including a review of Defendant's Plan documents and tobacco surcharge program;
b. gathering Plaintiff's documents and relevant information;
c. preparing a detailed complaint;
d. analyzing the legal arguments raised by Defendant;
e. tracking relevant case law;
f. requesting and reviewing relevant informal discovery during settlement

discussions;

g. preparing for and participating in extensive settlement discussions; and

h. achieving a very favorable Settlement on behalf of the Settlement Class.

16. Plaintiff has been actively engaged in this matter; she provided Class Counsel with information necessary to draft and/or file multiple pleadings, including pertinent information regarding her interactions with Defendant's tobacco surcharge program and her concerns regarding Defendant's alleged violations of ERISA. She stayed informed about the case, worked with counsel to prepare and review the complaint and other pleadings, and communicated regularly with counsel throughout the case, up to and including evaluation and approval of the proposed Settlement. Plaintiff also represented the Settlement Class in settlement discussions.

**III. The Settlement**

17. Class Counsel devoted significant resources toward prosecuting this Action, including investigating Plaintiff's claims, pursuing those claims aggressively, opposing Defendant's Motion to Dismiss, and negotiating the proposed Settlement. Class Counsel achieved a Settlement for the Settlement Class and negotiated a comprehensive Agreement, which includes a robust Notice Program, well-crafted Notice, and an automatic distribution process for Settlement Class Members.

18. The Settlement provides for Defendant and/or its insurance carrier to pay a Gross Settlement Amount of $2,313,480.87, which is the full and sole monetary payment by or on behalf of Defendant and the Released Parties in connection with the Settlement.

19. The Gross Settlement Amount will pay: (a) Settlement Class Member Benefits; (b) Administrative Expenses, including fees and expenses of the Settlement Administrator and

Independent Fiduciary Fees not to exceed $25,000.00; (c) taxes and any contingency reserve provided for in the Settlement Agreement; (d) a Case Contribution Award to Plaintiff if awarded by the Court, not to exceed $7,500.00; and (e) any attorneys' fees and costs awarded by the Court to Class Counsel. Subject to Court approval and deductions for attorneys' fees and costs, Administrative Expenses, taxes, the contingency reserve, and any Case Contribution Award, the Net Settlement Amount will be distributed to Settlement Class Members in proportion to the amount of their net tobacco surcharge payments during the Class Period pursuant to the Plan of Allocation. In exchange for the benefits provided by the Settlement, Plaintiff, the Plan (subject to Independent Fiduciary approval), and Settlement Class Members will release Defendant and the Released Parties from the Released Claims and covenant not to sue on those claims. The release becomes binding on the Settlement Effective Date, and the Action and Released Claims will be dismissed with prejudice pursuant to the Final Approval Order and Judgment.

20. The Complaint alleges that the members of the proposed Class are so numerous that joinder is impracticable and that the damages or other financial detriment suffered by individual Class Members is relatively small compared to the burden and expense of individual litigation. The Settlement Agreement provides for a non-opt-out class under Rules 23(a) and 23(b)(1). In light of the size of potential individual recoveries and the costs of individual litigation, the class action mechanism is the superior and most feasible method for adjudicating these claims.

21. The only agreement related to this Litigation is the proposed Settlement Agreement, attached as Exhibit 1 to this Declaration, and there are no additional or side agreements regarding attorneys' fees or costs related to the proposed Settlement.

22. Settlement Class Members are not required to submit claim forms to receive

benefits under the Settlement. The Settlement Administrator will use Defendant's data to calculate each Class Member's share, and payments will be issued automatically by check. Checks will remain valid for 200 days from issuance, and any remaining balance after the check-cashing period expires shall be distributed *cy pres* to the American Cancer Society, subject to Court approval.

23. Class Counsel have not been paid for their extensive efforts or reimbursed for litigation costs and expenses incurred. Class Counsel will seek a Case Contribution Award for Plaintiff Barbara A. Baker not to exceed $7,500.00, subject to Court approval, to compensate her for the time, effort, and risks she assumed in commencing and prosecuting the Action. Class Counsel may seek attorneys' fees not to exceed 33.33% of the Gross Settlement Amount, together with reasonable litigation costs and expenses, subject to Court approval.

## IV. Risks of Continued Litigation

24. Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay.

25. Class Counsel have extensive experience in class action litigation, including ERISA cases and matters involving wellness programs, and believe the claims asserted are meritorious. Their experience and knowledge of the applicable law informed their assessment of the strengths and weaknesses of the claims and defenses.

26. Class Counsel are pragmatic about the risks and challenges of litigation, including uncertainties in litigating this case through a motion to dismiss, class certification, summary judgment, and trial. Their experience and informed judgment led them to conclude that the Settlement provides immediate monetary relief while avoiding the costs, risks, and delay of continued litigation, including any appeal.

27. Each of these risks, by itself, could have impeded the successful prosecution of these claims at trial and in an eventual appeal—resulting in zero benefit to the Settlement Class. Under the circumstances, Plaintiff and Class Counsel appropriately determined that the Settlement reached outweighs the gamble of continued litigation.

28. The claims and defenses in this Action are complex, as is clear by the record and other similar cases involving ERISA wellness program violations. There is no doubt that continued litigation here would be difficult, expensive, and time consuming.

29. Given that Defendant denies liability, believes that it acted in good faith and in compliance with the law, and that it would prevail in opposing class certification and on the merits at trial, continued litigation would mean a long wait for Class Members, with no promise of recovery when the matter is finally concluded.

30. The Settlement provides immediate and substantial benefits to Settlement Class Members, including monetary payments from the $2,313,480.87 Gross Settlement Amount. The Net Settlement Amount will be distributed on a pro rata basis based on each Settlement Class Member's net tobacco surcharge payments during the Class Period pursuant to the Plan of Allocation. The proposed Settlement is the best vehicle for Settlement Class Members to receive relief in a prompt and efficient manner.

31. Whether the Action would have been tried as a class action is also relevant in assessing the fairness of the Settlement. As the Court had not yet certified a class at the time the Agreement was executed, it is unclear whether certification would have been granted. This litigation activity would have required the Parties to expend significant resources.

32. In Class Counsel's experience and informed judgment, the Settlement represents an excellent result, in providing substantial monetary relief to Settlement Class Members without

further delay, and in light of the challenging and unpredictable path of litigation Plaintiff would have faced absent a settlement.

**V. Recommendation of Counsel**

33. Based on thorough examination and investigation of the facts and law relating to Plaintiff's claims on behalf of the Settlement Class, including the information exchanged during settlement discussions, we believe the proposed Settlement is in the best interest of the Settlement Class. Our extensive factual and legal investigation informed us about the strengths and weaknesses of Plaintiff's claims as well as Defendant's potential defenses and allowed us to conduct an informed, fair, and objective evaluation of the value and risks of continued litigation.

34. Class Counsel and Defendant's counsel are all attorneys who are familiar with class action litigation related to ERISA wellness programs; particularly experienced in the litigation, certification, trial, and settlement of class actions, including ERISA cases; and knowledgeable of the legal and factual issues at the center of this Action. Filed concurrently herewith as Exhibit 2 is a true and correct copy of Siri's Firm Resume – Class Action. Siri has substantial experience litigating complex ERISA and class actions nationwide—including claims under ERISA § 702 and PHSA § 2705 addressing health-contingent wellness programs—and has vigorously prosecuted this case. I am currently serving as counsel in several other ERISA lawsuits.[1]

[1] *See Waggoner v. Carle Found.*, No. 24-cv-2217, ECF 27 (C.D. Ill. Sept. 16, 2025); *Bailey v. Sedgwick Claims Mgmt. Servs. Inc.*, No. 2:24-cv-02749, 2025 U.S. Dist. LEXIS 190335 (W.D. Tenn. Sep. 26, 2025); *Chirinian v. Travelers*, 0:24-cv-03956 (D. Minn.); *Greene v. Progressive*, 1:24-cv-01890 (N.D. Oh.); *Darrington v. Whole Foods*, 1:25-cv-00085 (W.D. Tex.); *Brewster v. Allied Universal*, 1:25-cv-00085 (C.D. Cal.); *Roman v. Walgreen*, 1:25-cv-01504 (N.D. Ill.); *Baker v. 7-Eleven*, 3:25-cv-01609 (N.D. Tex.); *Spence v. Casey's General Store*, 4:25-cv-00113 (S.D. Io.); *Leslie v. Rentokil*, 5:25-cv-01423 (E.D. Pa.); *Simpson v. Inspire*, 1:25-cv-02058 (N.D. Ga.); *Williams v. Bally's*, 1:25-cv-00147 (D.R.I); *Janosky v. USPI*, 2:25-cv-00068 (N.D. TX.); *Pinckney v. Nordstrom*, 2:25-cv-01396 (W.D. Wash.).

35. We recognize that despite our belief in the strength of Plaintiff's claims and Plaintiff's and the proposed Class's ability to secure a judgment and award of damages, the expense, duration, and complexity of protracted litigation would be substantial and the outcome uncertain.

36. We also are mindful that absent the proposed Settlement, Defendant's defenses could deprive the Plaintiff and the proposed Settlement Class of any potential relief whatsoever. Defendant would continue to challenge liability, would oppose class certification vigorously, and would prepare a competent defense at trial. Defendant could also appeal any adverse decision on the merits or challenge the award of damages.

37. The Parties have concluded that the benefits of settlement in this Action outweigh the risks and uncertainties of continued litigation, including potential motions to dismiss, class certification discovery and proceedings, merits discovery, pretrial motion practice, trial, and likely appellate review.

38. The Parties did not discuss attorneys' fees or any Case Contribution Awards until after agreeing on the material terms of the Settlement, including the Settlement Class definition, Settlement Class Benefits, and the Releases.

39. The Settlement was reached in the absence of collusion and is the product of good-faith, informed, and arm's-length negotiations by competent and experienced counsel after sufficient investigation and exchange of information. There was no compromise on anything other than the Parties' disputed claims and defenses. There are no additional agreements that require identification or examination under Rule 23(e)(3).

40. Plaintiff's counsel have vigorously represented the Settlement Class and will continue to do so after Preliminary Approval and Final Approval.

41. In our professional opinion, the relief provided by the proposed Settlement is fair, adequate, reasonable and in the best interests of the Settlement Class, and we respectfully recommend it to the Court for its preliminary approval. Plaintiff's Counsel have conferred with Plaintiff, who also supports the proposed Settlement.

**VI. Class Treatment is Appropriate**

42. For Settlement purposes, the Parties have agreed to certify a non-opt-out Settlement Class under Rules 23(a) and 23(b)(1), defined as: "All individuals who (a) were a Plan participant or beneficiary at any point from September 26, 2018, through the date of entry of the Preliminary Approval Order; (b) paid a tobacco or nicotine surcharge in connection with their participation in the Plan from September 26, 2018, through the date of entry of the Preliminary Approval Order; and (c) were not fully reimbursed the tobacco or nicotine surcharge payments made from September 26, 2018, through the date of entry of the Preliminary Approval Order." The Class Period is September 26, 2018, through the date of entry of the Preliminary Approval Order.

43. Either common legal questions or common fact questions are sufficient to establish commonality, and both are present here. Plaintiff has asserted multiple questions of law and fact—all centering on whether Defendant unlawfully imposed discriminatory tobacco surcharges without offering a reasonable alternative standard as required by ERISA—that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same or similar way, and that would generate common answers.

44. Plaintiff's claims are typical of those of the Class, as all stem from the same alleged course of conduct—the imposition of tobacco surcharges without an allegedly compliant wellness program offering a reasonable alternative standard. Moreover, common questions of

fact predominate because liability questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to each Settlement Class Member.

45. Resolution of claims in one action is far superior to individual lawsuits because it promotes consistency and efficiency of adjudication.

46. Plaintiff is an adequate Class Representative. She is fully committed to the responsibility of serving as Class Representative. Her claims are not antagonistic to or in conflict with the interests of the Settlement Class. She pursues the same legal theories challenging the same course of Defendant's conduct. Plaintiff and the absent Settlement Class Members seek remedies equally applicable and beneficial to their fellow Settlement Class Members. She has the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests.

**VII. Roles & Qualifications of Counsel**

47. During the course of this litigation, Siri & Glimstad LLP worked tirelessly to obtain the excellent settlement result proposed here. Under the terms of the Settlement Agreement, Oren Faircloth and William H. Payne, IV of Siri & Glimstad LLP are proposed as Class Counsel. See Settlement Agreement §§ I.9 and II.2(c).

48. As noted above, Class Counsel, including Oren Faircloth and William H. Payne, IV, have significant experience in the litigation and settlement of national class actions, including numerous ERISA cases, many of which have obtained final approval. Thus, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel. Each of us has extensive experience prosecuting class actions.

49. Class Counsel are qualified and competent, possess extensive knowledge of the applicable laws, and experience in prosecuting complex class actions in courts throughout the

United States, including cases similar to this one, and have led in the recovery of substantial amounts for the classes they represented. The experience, resources, and knowledge Class Counsel brings to this Action is extensive and formidable. Class Counsel has devoted substantial time and resources to this Action, is qualified to represent the Settlement Class, and will, along with the Class Representative, vigorously protect the interest of the Settlement Class.

**VIII. Settlement Administrator and Notice Program**

50. The Settlement Agreement provides for Class Counsel to retain a Settlement Administrator, subject to Defendant's agreement, which may not be unreasonably withheld. The Settlement Administrator, Rust Consulting, Inc., will administer the Settlement Notice, the Plan of Allocation, and distribution of the Qualified Settlement Fund; send the Settlement Notice by U.S. Mail to each Class Member identified on the Class Member List; and use commercially reasonable efforts to locate any Class Member whose Notice is returned and re-send the Notice one additional time. Defendant will provide the Class Member List to the Settlement Administrator no later than twenty-one (21) days after entry of the Preliminary Approval Order.

51. The proposed Notice Program is reasonably calculated to provide sufficient notice to all persons entitled to notice and satisfies applicable requirements of law and due process. The Settlement Administrator will use commercially reasonable efforts to locate any Class Member whose Notice is returned and re-send the Notice one additional time.

52. The proposed Settlement Notice will inform Settlement Class Members of the Settlement's substantive terms, their right to object, and the Final Approval Hearing. Because this is a non-opt-out settlement under Rule 23(b)(1), Settlement Class Members may object in writing in accordance with the Preliminary Approval Order and Settlement Notice. The proposed Notice will be sent by U.S. Mail and will provide information about the Settlement Website and

other means of obtaining additional information about the Settlement.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 13th day of October, 2026, in Hartford, Connecticut.

*/s/ Oren Faircloth*
Oren Faircloth